MOSES TRAUERMAN, Respondent, v. W. V. LIPPINCOTT, Appellant.

Kansas City Court of Appeals, February 17, 1890.

*Rehearing denied, March 1, 1890.*

1. **Landlord and Tenant:** COVENANT AGAINST SUB-LETTING : FORFEITURE : TRESPASS.    A lease provided that there should be no sub-letting without the lessor's written consent, and a failure to keep and perform any of its covenants or agreements should produce a forfeiture if so determined by the lessor.    The tenant, without the required consent, sub-let a part of the premises to a sub-tenant, who, to the knowledge of the lessor's agent in charge, occupied the same and paid his rent with his checks to the tenant, who passed them on to the agent in payment of his rent.    The

Trauerman v. Lippincott.

lessor never declared a forfeiture of the lease, and during the currency of the sub-lease the tenant surrendered his lease, leaving the sub-tenant in possession. Thereafter, the lessor's agent sought to get the sub-tenant to vacate, which he positively refused to do. Thereupon, the agent sent his servant to remove the doors of the sub-tenant's apartment, and, in so doing, being resisted, he using opprobrious epithets, pushed and assaulted the sub-tenant. *Held*,

(1) In an action in trespass by the sub-tenant against the agent, the court could do nothing less than direct a finding for plaintiff.

(2) The sub-tenant was rightfully in possession.

(3) The lessor had waived any forfeiture to which he may have been entitled.

(4) The surrender of the original lease by the original lessee could not affect the right of the sub-lessee, at least in so far as his present right and lawfulness of possession were concerned.

2.  **Malice**: INSTRUCTION: GOETZ V. AMBS. An instruction defining malice in keeping with the case of *Goetz v. Ambs*, 27 Mo. 28, is examined in connection with a review of the later cases and approved.

3.  **Trespass**: EXEMPLARY DAMAGES: WANTONNESS. In actions in the nature of trespass there must be, in order to justify exemplary damages, some element of wantonness or bad motive; not necessarily ill-will or spite against the injured party, but malice of a general nature, let the injury fall where it may.

4.  **Definitions**: WANTONLY. Wantonly means causelessly, without restraint and in reckless disregard of the rights of others.

5.  **Evidence**: TRESPASS: RES GESTÆ: CONTRADICTION. In an action against the master for trespass, though it may be incompetent to admit as *res gestæ* the declarations made after the trespass is over, by the servant who committed it as to the object in doing it, yet such declarations are competent to discredit such servant, a proper foundation having been laid for that purpose.

6.  ———: JUDGMENT OF OUSTER: ESTOPPEL: PLEADING. In an action of trespass by the sub-lessee against the lessor's agent, it is not error to refuse to admit in evidence the judgment of a justice of the peace at the suit of the lessor, adjudging the plaintiff guilty of unlawful detainer of the premises in dispute, no estoppel having been pleaded, which must be done in order to be available.

7.  **Damages**: EXCESSIVE. Damages of fifteen hundred dollars not deemed so excessive in this case as to justify disturbing verdict.

Trauerman v. Lippincott.

*Appeal from the Jackson Circuit Court.*—HON. R. H.
FIELD, Judge.

AFFIRMED.

*Leammon & Stubenrauch,* for the appellant.

(1) The plaintiff, though in possession, had no
lawful right to the possession. He, therefore, cannot
maintain this action. The court then erred in refusing
to sustain the demurrer to the evidence in refusing
instruction number 17 asked by the defendant to the
effect that, under the pleadings and evidence, they
must find for the defendant. *Taunton v. Custon,* 7
Term R. 43; *Krevet v. Meyer,* 24 Mo. 107; *Fuhr v.
Dean,* 26 Mo. 106; *Low v. Ewell,* 121 Mass. 309; *Mug-
ford v. Richardson,* 88 Mass. 76; *State v. Ross,* 69 Am.
Dec. 754; *Harvey v. Bridges,* 14 Mee. and N. 437;
*Turner v. Meynott,* 1 Bing. 158; *Moeder v. Stone,* 48
Mass. 151; *Hyatt v. Wood,* 4 Johnson (N. Y.) 150;
*Sterling v. Worden,* 51 N. H. R. 217; *Overdeer v.
Lewis,* 1 Wall. & Sergeant, 9; s. c., 37 Am. Dec. 440;
*State v. Bittinger,* 55 Mo. 599; *Lindell's Adm'r v.
Railroad,* 36 Mo. 543; *Moore v. White,* 45 Mo. 208;
*Cooley v. Acheson,* 23 Mo. App. 261. (2) The court
erred in giving instruction number 2, asked by the
plaintiff, wherein the jury were told that the malice
intended by the instructions, and the malice necessary
to vindictive damages, was that indicated by the inten-
tional doing of a wrongful act without just cause or
excuse, and that it was not necessary, to constitute malice
as defined in the instructions, that the defendant or his
servant, Blunk, should have had any spite or ill-will
toward the plaintiff. *Edelman v. St. L. T. Co.,* 3 Mo.
App. 503; *Railroad v. Quigley,* 21 How. 241; *Penning-
ton v. Meeks,* 46 Mo. 217; *Kennedy v. Railroad,* 36 Mo.
362; *Morgan v. Durfee,* 69 Mo. 469; *Franz v. Hilder-
brand,* 45 Mo. 121; *Logan v. Railroad,* 77 Mo. 663;

*Keller v. Railroad,* 22 Mo. App. 356; *Claybrook v. Railroad,* 19 Mo. App. 432; *Engle v. Jones,* 51 Mo. 316; *Parsons v. Railroad,* 96 Mo. 299; *Clark v. Tairly,* 30 Mo. App. 339; *Powell v. Quarry Co.,* 33 Mo. App. 18. (3) The court erred in instructing the jury, in plaintiff's instruction number 1, that they must find for plaintiff. *Halliday v. Jones,* 59 Mo. 482; *Glasgow v. Lindell,* 50 Mo. 60; *Prentiss v. Warne,* 10 Mo. 601; *Cole v. Key,* 76 Wis. 500; 46 Am. Rep. 293-7; *Kerr v. Clark,* 19 Mo. 132; *Livermore v. Eddy,* 33 Mo. 547; *Matthews v. Tobener,* 39 Mo. 115. (4) The damages assessed by the jury were excessive—fifty dollars actual damages, fourteen hundred and fifty dollars punishment to defendant. *Piquel v. McKay,* 2 Blackf. 467; *Goetz v. Ambs,* 22 Mo. 170; *Logan v. Small,* 43 Mo. 254; *Railroad v. Vannalla,* 21 Ill. 188; *Welsh v. McAllister,* 15 Mo. App. 492; *Knelz v. Blackman,* 46 Mo. 320; *Walson v. Harmon,* 85 Mo. 443; *Doly v. Steinberg,* 25 Mo. App. 336; 1 Sutherland on Dam. 810, *et seq.* (5) The court erred in refusing to permit the judgment of Clayton, J. P., whereby the premises claimed by plaintiff were, by the judgment of the justice, found to have been wrongfully detained by him from June 1, 1887, prior to the alleged injuries to be introduced in evidence. *Emery v. Fowler,* 63 Am. Dec. 627; *Kimersley v. Orpe,* Dorsey R. 517; *Tarlton v. Johnson,* 10 Am. Dec. 515; *Plumb v. Crane,* 123 U. S. 560. (6) The court erred in permitting the plaintiff's witness, Hackett, to testify that defendant's servant, Blunk, told him after Blunk had taken off the doors, and was carrying them away, in answer to the question of witness as to what he was doing: "We are trying to get the damned Jew out of here." *McDermott v. Railroad,* 73 Mo. 516; *Rogers v. McCune,* 19 Mo. 558; *Bank v. Bank,* 60 N. Y. 278; s. c., 19 Am. Rep. 181; *Luby v. Railroad,* 3 Smith (N. Y.) 131; *Devlin v. Railroad,* 87 Mo. 545.

*Henry Wollman* and *Wash. Adams*, for the respondent.

(1) The justification for this outrageous conduct was claimed under the rule at common law of excluding trespassers by force. The circuit court admitted this rule on the authority of the following cases : *Krevet v. Meyer*, 24 Mo. 107; *Fuhr v. Dean*, 26 Mo. 156; but held the rule did not apply because no forfeiture had been declared, as contemplated by the Owsley case. The view entertained by Judge FIELD was that the fact of under-letting to Trauerman did not operate *per se* to render the lease void, but that, by the terms of the lease, at most, this was cause of avoiding it by declaration of forfeiture, and that the surrender by Owsley, and acceptance thereof by Emmons Bros., during the existence of Trauerman's underlease, was a surrender and acceptance *cum onere*. (2) The law is well settled where the proviso is that the lease shall be void and the lessor re-enter it is only voidable by re-entry, not void *per se*. *Garnhart v. Finney*, 40 Mo. 460; *Rogers v. Snow*, 118 Mass. 118; *Bemis v. Wilder*, 100 Mass. 446; 2 Taylor's Landlord and Tenant [8 Ed.] 492; *Lewis v. St. Louis*, 69 Mo. 595; *Knight v. Railroad*, 70 Mo. 231; Wood's Landlord and Tenant, sec. 513, p. 861. (3) A tenant cannot, by a surrender of his lease to the landlord, affect the rights of the sublessee. 2 Taylor's L. and T., secs. 111 and 517; *McKenzie v. Lexington*, 4 Dand. 129; Wood's L. and T., p. 487. (4) Our contention in the lower court was, and is here, that the principle of common law, which exempted the owner from liability in trespass, for forcibly ejecting one in possession without right of real property, is in conflict with the statute of forcible entry and detainer. *Reeder v. Purdy*, 41 Ill. 279; *Hillary v. Gray*, 6 C. & P. 284; *Newton v. Harland*, 1 M. & G. 644; *Duston v. Cowdry*, 23 Vt. 631. (5) The cases of

*Krevet v. Meyer* and *Fuhr v. Dean,, supra,* are, in effect, overruled by subsequent decisions of the supreme court, and departed from by the courts of appeal. (6) Those cases, which hold that the owner of land has no right to eject by force a trespasser thereon, but must resort to action at law to remove him, are not consistent upon any basis of reason with the existence of a right on the part of such owner to forcibly eject such trespasser. The following cases assert a principle that is irreconcilable with the common-law right in question : *Voigt v. Avery,* 14 Mo. App. 48; *Frank v. Nichols,* 6 Mo. App. 72; *Delworth v. Fee,* 52 Mo. 130; *Craig v. Donnelly,* 28 Mo. App. 342; *Harris v. Turner,* 46 Mo. 438. (7) The plaintiff's instruction defining malice is a correct declaration of law. *Goetz v. Ambs,* 27 Mo. 32. (8) This instruction has received the sanction of the courts even in cases involving life and death. *State v. Schooenwald,* 31 Mo. 147; *State v. Ellis,* 74 Mo. 210; *State v. Mitchell,* 64 Mo. 191; *State v. Baber,* 11 Mo. App. 585-6. In civil actions when malice is in issue it has often been approved. *Bromage v. Brasser,* 4 B. & C. 255; *Alexander v. Harrison,* 38 Mo. 158; *Buckley v. Knapp,* 48 Mo. 152; *Goetz v. Ambs,* 27 Mo. 28; *Pennington v. Meeks,* 46 Mo. 27. (9) "The argument is futile that Lippincott's belief that he had a right to do the act complained of shields him from punitive damages." This point is ruled in the following cases : *Winebiddle v. Porterfield,* 7 Barr. 137; *White v. Maxey,* 64 Mo. 552. (10) The court admitted it not as a part of the *res gestæ,* but as tending to affect the credibility of defendant's witness, Blunk. We think it was admissible as original evidence, being part of the *res gestæ. Leahey v. Railroad,* 97 Mo. 165. (11) The justice's judgment was rightly excluded, if for no other reason, because Lippincott was not a party to it. The issue in the case at bar is not the same as that involved in an unlawful detainer suit. *Carter v. Scraggs,* 48 Mo. 302;

*Beeler v. Cardwell*, 29 Mo. 74.   (12)  The verdict is not excessive.   The rule on the subject of disturbing verdicts for this cause is thus stated by Judge RICHARDSON in *Goetz v. Ambs*, 27 Mo. 34.

ELLISON, J.—This cause is an action for trespass in which plaintiff prevailed in the trial court; the jury rendering for him the following verdict:

"We, the jury, find for plaintiff, and assess his damages in the sum of fifteen hundred dollars, said sum to be made up as follows: Actual damages, fifty dollars; punishment to defendant, fourteen hundred and fifty dollars—fifteen hundred dollars.

"JAMES CARTER, Foreman."

The facts were substantially these: "Emmons Brothers" were the owners of a building in Kansas City and defendant was then general agent in charge thereof.   On January 1, 1883, C. S. Owsley leased room number 3 of this building for office purposes by a written lease for five years.   The lease provided that there should be no sub-letting except by the written consent of the lessors.   It also provided that any failure "to keep or perform any of the covenants or agreements herein contained shall produce a forfeiture of this lease, if so determined by said lessors, or their heirs, assigns or legal representatives."

Owsley afterward sub-let one-half of this room to plaintiff, who was a practicing lawyer, and rented for office purposes at the rate of ten dollars per month, payable monthly.   Defendant, if he did not know all the terms of this renting to plaintiff, did know of the renting.   He saw him in the office at different times and knew he had a desk there.   He probably knew of his sign on the door.   He received from Owsley for a long period plaintiff's ten-dollar checks to Owsley for rent, as part payment of what was due from Owsley.   Defendant never declared a forfeiture of the lease and did not

at any time look upon it as forfeited. Eight months before the original lease expired, to-wit, May 1, 1887, and during the currency of the year for which Owsley had sub-let to plaintiff, he, Owsley, surrendered up his original lease. Thereupon, it seems that defendant sought to get plaintiff to vacate the portion of the room which he was occupying, and which it appears had been or was separated from Owsley's portion by a partition with a door. Defendant had an interview with the plaintiff at his office in this regard and plaintiff positively declined to leave, claiming his right under his renting.

The next day defendant sent his servant in his employ, together with a carpenter, to the office with orders to take off the doors. They proceeded to execute these orders. Plaintiff resisted them, claimed the office as his and ordered them to desist on pain of arrest. The carpenter refused to proceed, but the servant began to take off one of the doors, when plaintiff placed himself against it and demanded that it be let alone. The servant, as he says, pushed him away by pushing the door against him. The carpenter says, by pushing the door and also by pushing him with his elbow. The plaintiff says he was not only pushed away but was slapped and assaulted by the servant who accompanied such physical contact by violent and opprobrious epithets. In this way both inside and outside doors were taken away.

*The servant told defendant that he had taken off the doors and "what had happened."* He asked defendant if he should take the doors back and defendant directed him not to do so. The servant was still in defendant's employ at the time of the trial.

The court gave the following instructions for plaintiff, of which complaint is earnestly made :

"1. The jury are instructed that they must find for the plaintiff in this case, and in assessing his damages they must allow him such sum as they believe will

fully compensate him for the mental anguish, humiliation and mortification suffered by him, if any, by reason of the acts of William Blunk in removing the doors in question, and by reason of any intentional striking or shoving of said plaintiff by said Blunk, if any, while executing the instructions of defendant in effecting such removal. And if the jury further believe from the evidence that the acts aforesaid were maliciously done by said Blunk, or ordered to be done by defendant through malice, then in addition to the damages hereinbefore authorized, the jury may, in their discretion, award such further sum by way of punishing the defendant as will serve as an example and warning to others.

"2. The jury are instructed that malice, as used in these instructions, means the intentional doing of a wrongful act without just cause or excuse. It is not necessary, to constitute malice as here mentioned, that defendant, or Blunk, should have had any spite or illwill towards plaintiff."

Under the evidence the court could do nothing less than direct a finding for plaintiff. The undisputed facts, which I have substantially set forth, left a plain and indisputable right in the plaintiff to recover damages for the trespass.

But, as I understand the argument of defendant's counsel, the contention is that defendant stands in the shoes of his principals who were owners of the building; that these owners had the title and right of entry, that is, a then present right to the possession of the premises in controversy. That under such state of case trespass will not lie at the instance of him wrongfully in possession, though he be put out by force. That his only remedy is the statutory one of forcible entry and detainer.

The difficulty with this contention, as we shall here treat it, is that it is not borne out by the undisputed

facts. Those facts show plaintiff was rightfully in possession at the day of the trespass. He had occupied the premises with defendant's knowledge. He had paid the rent a number of times with his individual checks, stating on their face that they were for rent and which were turned over to defendant and accepted and used by him. If the sub-letting to plaintiff by Owsley was a cause of forfeiture under the terms of the lease, that forfeiture was never asserted, as it is declared in the lease it should be. Defendant himself testifies he never determined or declared a forfeiture. Besides he unquestionably waived any forfeiture to which he may have been entitled. *Garnhart v. Finney*, 40 Mo. 449. So whatever may be considered the proper duration of plaintiff's tenancy, he was, at the time of the entry by defendant's servants, a tenant, and entitled to the possession. The surrender of the original lease by the original lessee could not affect the right of the sub-lessee, at least in so far as his then present right and lawfulness of possession was concerned. Taylor's L. & T., secs. 3, 517; Wood's L. & T., sec. 499. These considerations make defendant's argument inapplicable and sustain the action of the trial court.

The instruction defining malice is in keeping with the case of *Goetz v. Ambs*, 27 Mo. 28, and that case is not, as might at first appear, so irreconcilable with the more recent rulings of the supreme court on the question in the cases of *Franz v. Hilderbrand*, 45 Mo. 121; *Engle v. Jones*, 51 Mo. 316; *Graham v. Railroad*, 66 Mo. 536; *Seebel v. Seimon*, 72 Mo. 526; *Bruce v. Ulery*, 79 Mo. 322; *Brown v. Railroad*, 89 Mo. 152; *Welch v. Stewart*, 31 Mo. App. 376; *Pruitt v. Cheltenham*, 33 Mo. App. 18.

From a consideration of these cases it would appear that in actions in the nature of trespass there must be, in order to justify exemplary damages, some element of wantonness or bad motive. There need not be any personal ill-will or spite towards the party injured, for

the wantonness or reckless, lawless spirit may be displayed in a trespass against the property of a stranger. Malice may be of a general nature, let the injury fall where it may. *State v. Wienners*, 66 Mo. 18. The instruction given, following *Goetz v. Ambs, supra*, states that malice "means the intentional doing of a wrongful act without just cause or excuse." This means that he not only intended to do the act which is ascertained to be wrongful, but that defendant knew it was wrongful when he did it. This is as it has always been understood in cases of homicide. Understood in this way *Goetz v. Ambs* is not out of line with the foregoing decisions requiring the act to partake of wantonness or a reckless disregard of the rights of others. For, if one intentionally does a wrongful act and knows at the time that it is wrongful, then he does it wantonly, by which word I understand is meant, causelessly, without restraint and in reckless disregard of the rights of others. When one intentionally commits a wrong, he does it from an evil spirit and bad motive. Good motive or spirit does not impel the commission of wilful wrong.

Objection is made to testimony of witness Hackett as to the declarations of defendant's servant as he was carrying the door down stairs wherein he stated that he was taking off the doors to get "this Jew, or this damned Jew, out of here." The argument against it is that it was a narrative of a past event and not a part of the *res gestæ*. Be this as it may, it was admitted, as stated by the court, only for the purpose of discrediting the servant, who had, while on the witness stand, denied making such statement. The testimony was proper.

Objection is also made to the action of the court in excluding the judgment and record of proceedings before a justice of the peace in a suit begun by "Emmons Bros." against this plaintiff, whereby plaintiff herein, therein was adjudged guilty of unlawful

detainer of the premises in dispute. The judgment would only be admissible as an estoppel against this plaintiff to assert a right, in such judgment adjudged against him. It is enough to say of this that no estoppel was pleaded by defendant which must be done in order to be available. *Miller v. Anderson*, 19 Mo. App. 71. For, though a judgment is of itself an estoppel of record, yet this judgment is not the result of an action between the parties to this action. Defendant was no party to it, and it only becomes applicable to this case by matter *in pais* which should have been set forth.

Answering the complaint that the damages are excessive we will say that the amount is not so great, considering the nature of the wrong and the manner in which it was committed, as to justify us in disturbing the verdict.

It is not necessary to enter into a specific discussion of the instructions refused for defendant, further than to say that, in our opinion, those given for the parties appear to have sufficiently covered the issues in the cause. We will, therefore, affirm the judgment. All concur.