WILLIAM H. ELLIOTT, Respondent, v. JOHN M. ABELL, Appellant.

St. Louis Court of Appeals, February 18, 1890.

1. **Forcible Entry and Detainer : BURDEN OF PROOF.** When the plaintiff founds his case on the charge that the defendant is in possession of the land sued for as tenant of his grantor, and that such tenant's term has expired, it is incumbent on the plaintiff to show that, at the date of the conveyance of the land to him, the defendant held the land as such tenant; and his recovery must be limited to such land, as to which he establishes such tenancy.

Elliott v. Abell.

2. ———: EQUITABLE DEFENSE. The fact that, during the term and prior to the conveyance of the land to the plaintiff, the plaintiff's grantor had contracted to sell the land to the defendant, is no defense to an action for unlawful detainer, the tenant's remedy, if the plaintiff acquired the property with notice of the contract, being in equity.

3. ———: AMENDMENT OF COMPLAINT. The complaint in an action for unlawful detainer may be amended in the circuit court by enlarging the claim for damages.

*Appeal from the Ralls Circuit Court.*—HON. THOMAS H. BACON, Judge.

REVERSED AND REMANDED.

*Bristow & Lighter* and *J. C. Peirsol*, for the appellant.

The court erred in permitting the plaintiff to amend his complaint so as to increase his claim for damages from one hundred dollars to six hundred dollars. *Moore v. Dixon*, 50 Mo. 424; *Feedler v. Schroeder*, 59 Mo. 366; *Poulson v. Collin*, 18 Mo. App. 605; *Fletcher v. Keyte*, 66 Mo. 285; *Baldwin v. Whitcomb*, 71 Mo. 655; *McQuoid v. Lamb*, 19 Mo. App. 155; *Ewing v. Donnelly*, 20 Mo. App. 9. (2) The defendant complains of the action of the court in refusing his instructions. The theory of the defendant in this cause is that he was in possession of the whole tract of land in controversy as a vendee, put in possession by Russell, the vendor; that as to the greater part of the land in controversy he had never held under his lease from Hume; and as to all the other land rented he had surrendered the possession of the oat land and the corn land to Dr. Bell, whose stock grazed and fed on it during the winter. The dwelling house and stable was all that the defendant had possession of on January 1, 1888. Now, if he took possession of the land under the license given him by Russell in his letters, then the plaintiff could not maintain this action

Elliott v. Abell.

without previous notice to quit, and written demand for possession. R. S. 1879, sec. 2420; *Drehman v. Stifel,* 41 Mo. 208; *Hyde v. Golsby,* 25 Mo. App. 29; *Railroad v. Hill,* 60 Mo. 281. If so, then the court ought to have given the defendant's instructions which presented that theory of the law.

*James P. Wood* and *G. W. Whitecotton,* for the respondent.

There was no error in permitting plaintiff to amend the *ad damnum* clause in his complaint. *McClannahan v. Smith,* 76 Mo. 428; *Houser v. Duncan,* 50 Mo. 453; *Transier v. Railroad,* 54 Mo. 189; *Hanson v. Jones,* 20 Mo. App. 595; *Roberts v. Lynch,* 15 Mo. App. 456; *Shaffner v. Leahy,* 21 Mo. App. 110. There was no error in refusing defendant's instructions. They presented his theory of the case and the defense relied on by him, which was that during the pendency of the lease, and before the termination thereof, he had made a contract of purchase with one of the Russells, plaintiff's grantors; that in pursuance of this contract of purchase he had taken possession of the entire one hundred and twenty acres, and was so holding on March 1, 1888, when the lease expired, and that, therefore, he was not bound under his lease to quit possession of the premises and surrender the same to plaintiff according to the terms of his lease. The tenant will not be heard to dispute his landlord's title; nor can he interpose an equitable title in himself to defeat a recovery by his landlord, or, as in this case, his landlord's grantee; the justice could not adjudicate the question of the equitable title, nor could the circuit court in a trial *de novo* adjudicate the equitable title sought to be interposed. The only question to be tried was that of possession, with damages as the proper incident on account of the holding over. *Finney v. Cist,* 34 Mo. 303; *Ridgely v. Stillwell,* 28 Mo. 400; *Gooch v. Holland,* 30 Mo. App. 450; Herman on Estoppel, secs. 852, 853.

Elliott v. Abell.

BIGGS, J., delivered the opinion of the court.

On the first day of February, 1887, one W. J. Hume was the owner of a farm in Ralls county, and, on that day, he and the defendant entered into a written contract, by which certain portions of the farm were rented to the defendant. The part so rented was described in the contract as follows: "A dwelling house, stable, garden, potato patch, about forty acres of land to be sown in oats, and about thirty-five acres to be planted in corn. * * * For which the said Abell is to pay to said Hume half of the corn shucked out and put in his cribs, also the entire stalk field from same; also half of the oats threshed at the yards, and two-thirds of the straw from the same. * * * Possession to be given of the corn lands as soon as corn is gathered, of the oat land as soon as the oats are stacked, and the remainder of the premises by the first day of March, 1888." After the contract of renting had been entered into, to-wit, on the first day of March, 1887, Hume sold the following portions of his farm to Eli and J. N. Russell, to-wit, the north half of the northeast quarter, and the north half of the south half of said northeast quarter, of section twenty-two (22), township fifty-six (56), range seven (7) west, containing one hundred and twenty acres. The land conveyed by the deed embraced the land rented to the defendant, except about twenty acres of the land afterwards planted in corn by him. After the purchase, the defendant recognized the Russells as his landlords under the lease, and accounted to them for the rent as therein stipulated. On the ninth day of February, 1888, the Russells by warranty deed conveyed to the plaintiff the lands above described.

On the fifth day of March, 1888, the plaintiff instituted before a justice of the peace this action of unlawful detainer. It was alleged in the complaint that the plaintiff on the first day of March, 1888, was the owner and entitled to the possession of the one hundred

and twenty acres of land ; that the defendant's right of occupancy as a tenant expired on March 1, 1888, and that he wrongfully and unlawfully detained the possession thereof from the plaintiff. The case was transferred from the justice of the peace to the circuit court by writ of *certiorari*. On the trial in the circuit court the jury found the defendant guilty as charged in the complaint, and assessed the plaintiff's damages at the sum of two hundred and forty-three dollars and fifteen cents. On the plaintiff's motion the court doubled the damages found by the jury, and judgment was entered in accordance with the verdict of the jury.

The plaintiff proceeded against the defendant on the ground that the latter was put in possession of the land sued for as a tenant of plaintiff's immediate grantors ; that the tenancy, being for a definite time, had expired, and that the defendant was guilty of an unlawful detainer by holding possession of the premises after the expiration of his lease. To make out his case, the plaintiff read in evidence : (1) The written contract executed by Hume and the defendant. (2) The deed from Hume to E. W. and J. N. Russell. (3) Letters from the defendant to E. W. Russell tending to prove that the defendant had recognized the Russells as his landlords under the Hume lease. (4) The deed from E. W. and J. N. Russell to plaintiff. (5) Evidence tending to prove the damages sustained, and the value of the monthly rents and profits.

It was conceded that the defendant, at the date of the institution of the suit, was in possession of the entire tract of land, but the plaintiff introduced no evidence, other than that furnished by the lease itself, to identify and locate the forty acres to be sown in oats and the thirty-five acres to be planted in corn, except the following plat of the land, which was attached to a letter written by the defendant to Russell:

Elliott v. Abell.

## PLAT OF PREMISES.

EXPLANATION OF DIAGRAM.

A.   House and stable lots—about one acre.

B.   Clover and weeds.

C.   Meadow.

D.   Oat land.

E. and F.   Thirty-five acres rented and to be put in corn. (F, although rented by Abell from Hume in the contract read in evidence, is no part of the premises sued for.)

G.   About ten acres of timber.

H.   Twenty acres rented in 1887 by Sam Abell, but a part of the premises sued for.

J. and F.   The Hume farm sold to Bell.

The defendant's evidence tended to prove that he occupied under this contract with Hume lots "A," "D," "E" and "F;" that he finished gathering his corn in December, 1887; that on or about the first day of January, 1888, he terminated his tenancy of the oat and corn land by surrendering the possession of the same to Dr. Bell, to whom the Russells had sold the straw and stalks; that after this he only had the possession and control of the house, stable and garden under his rent contract; that lot "H" was rented during the year 1887 to one Samuel Abell, and that the defendant had no control over it as tenant under Hume. The defendant also introduced evidence tending to prove that on or about the sixth day of February, 1888, and prior to the purchase by plaintiff, he made a contract with the Russells for the purchase of the land in question, and that he thereafter, by and with the consent of the Russells, took and held the possession of the entire farm as a purchaser, and that he was so occupying it at the date of the institution of this suit.

I.   The defendant's first assignment of error, which we deem it necessary to notice, is the claim that the recovery by plaintiff of the entire tract sued for was not warranted by the law and the evidence in the case. It must be borne in mind that this suit was instituted against the defendant without notice to quit, and the recovery of the entire land sued for was had upon the theory that the defendant was a tenant holding over after the expiration of his term.   In such a case, notice to quit the possession is unnecessary.   Therefore, in order to sustain the judgment, it must appear from the evidence that, at the date of the plaintiff's purchase, the defendant was in possession of all the land, for which a recovery was had under his contract with Hume.   No other contract of renting was established or relied on by plaintiff.

Let us look at the contract and discuss its provisions. By its terms it appears that the defendant rented and was to have the use of the house, stables and garden, and designated on the plat as lot "A." He was also to have the use of forty acres of land to sow in oats, and of thirty-five acres of land to plant in corn. This was the extent of the contract. As Hume owned a much larger body of land than that mentioned in the contract, and as the contract did not designate which particular tracts were intended, it was necessary and perfectly competent, under well-established rules, for plaintiff to identify and locate the particular land intended by the introduction of extrinsic evidence. This the plaintiff did by introducing in evidence the plat. In respect of the land in controversy, the plat indicated that the defendant sowed lot "D" in oats, and planted lot "E" in corn. These lots, together with lot "F," which is not in controversy, covered all the land mentioned in the Hume contract.

Under this state of the *proof*, how can the judgment for the recovery of lots "B," "C," "G" and "H" be sustained? It is out of the question to say that the Hume contract can be made to apply to and embrace these lots. To do so would violate all known rules of construction. Neither is there anything in the correspondence between the defendant and Russell, as contended for by counsel, indicating that they understood that the Hume contract extended to the entire tract, or that the defendant was occupying the lots in question on the same terms stated in the written contract. The plaintiff's evidence admits of no possible hypothesis on which his recovery can be upheld. The case is in no way helped out by the defendant's evidence, but the very contrary is true. The defendant's evidence tended to prove that lot "H" was rented by Hume to one Samuel Abell in the year 1887, and that the latter occupied it as a tenant during that year, and that he

(defendant) was never at any time in possession of any portion of the land in controversy as a tenant, except lots "A," "D" and "E." It appeared in argument, and the fact may also be inferred from one of the court's instructions, that lots "B," "C" and "D" were in one enclosure; that the dividing line between them was not indicated by any fence or other barrier, and that, therefore, a definite description of them as separate tracts was impracticable. If that was true, it furnished no reason why the defendant should be convicted of an unlawful detainer of all three of the lots. It was the duty of the plaintiff to take the necessary steps to relieve the case of this uncertainty. He was in possession of the Hume contract, and knew its terms; he had instituted a *quasi* criminal prosecution against the defendant, and he should have been prepared with his evidence to make out his case. Our conclusion is that the plaintiff's right of action under the Hume contract must be confined to lots "A," "D" and "E," and that, therefore, the judgment for the recovery of the entire one hundred and twenty acres must be reversed.

II. The fact that there will have to be a retrial makes it necessary for us to notice another defense relied on by defendant. His evidence tended to show that, for some time previous to the transfer of the land to plaintiff, he (defendant) had been negotiating with Russell for its purchase, and that, prior to plaintiff's purchase, he had, by correspondence with Russell, entered into a contract for the purchase of the land, and that, by permission and direction of Russell, he had taken possession of the land as purchaser, and so held it at the time plaintiff bought. The defendant's evidence also tended to prove that, on the first day of January, 1888, in compliance with the terms of the Hume contract, and in obedience to the directions of his landlords, he turned over the possession of lots "D" and "E" to one

Dr. Bell, who had purchased from Russell the stalks, straw and stubble thereon, and that defendant had no further control of these lots, until he took possession of them as purchaser. The defendant's counsel insist, that these facts, if true, constituted a complete defense to the present action, in other words, that the tenancy under the Hume contract was terminated, and that the subsequent holding by the defendant must be regarded as that of a tenant at will. We are inclined to agree with the defendant in this, so far as lots "D" and "E" are concerned, but we cannot see upon what principle such a defense can be made so as to defeat a recovery of lot "A." If the defendant holds a valid contract of purchase, not evidenced by paper title antedating that of plaintiff's, and the latter had notice of it, the defendant's only remedy in respect of lot "A" would be to enjoin the further prosecution of this action until his rights, under the purchase, could be determined by a court of equity. *Crawford v. Paine*, 19 Iowa, 172.

It will not be necessary for us to discuss in detail the instructions in the case. What we have said sufficiently indicates what, in our judgment, is the law applicable to the case, and will be a sufficient guide on a retrial. We will say, however, that instruction number 2, given by the court on its own motion, is correct, except that it makes the defendant bear the consequences resulting from the unsatisfactory condition of the evidence in respect of the boundaries of the corn and oat land, and proceeds upon the idea that, if such boundaries could not be ascertained by the jury, then it would be right to find the defendant guilty of an unlawful detainer of the entire premises.

There is another matter of which the defendant complains, which we ought to notice. The complaint filed before the justice placed the damages at one hundred dollars. The circuit court allowed the plaintiff to amend by inserting six hundred dollars as damages instead

of one hundred. We think the amendment was proper. It in no way changed the cause of action, and the continuance of the litigation made it necessary.

The judgment of the circuit court will be reversed and the cause remanded. All the judges concur.