BOARD OF TRADE OFFICE BUILDING, APPELLANT, v. SHANNON GRAIN COMPANY ET AL., RESPONDENTS.*

Kansas City Court of Appeals. December 2, 1929.

1200

*Corpus Juris-Cyc. References: Landlord and Tenant, 35CJ, Section 255, p. 1080, n. 91.

*Bowersock, Fizzell & Rhodes* for appellant.

*Frank M. Lowe* for respondent.

BLAND, J.—This suit is one in unlawful detainer. The case was tried before the court without the aid of a jury. No declaration of law or finding of facts was asked or given. The trial resulted in a judgment in favor of defendants and plaintiff has appealed.

The judgment was rendered in a consolidated cause made up of three separate unlawful detainer actions, all of which involved rooms in the old Board of Trade Building in Kansas City. These rooms were leased to the defendant, Shannon's Grain Company, by written leases. In said leases the Shannon Grain Company agreed not to assign or sublet the whole or any part of the premises leased, nor permit any other person to have desk room in or occupy the same without the written consent of the lessor. Said leases further provided that in case of the breach of any of the covenants in the leases by the lessee the lessor, its successors or assigns, might immediately, or at any time thereafter while default continued, without further notice or demand, enter the leased premises and repossess the same and expel the lessee and those claiming under it and remove its effects (forcibly if necessary).

One of the rooms in controversy was leased by the plaintiff (the owner of the building) to the Shannon Grain Company for a term beginning July 1, 1914, and ending June 30, 1916. The other rooms were so leased for a term beginning January 1, 1916, and ending December 31, 1917.

On August 29, 1916, a receiver for plaintiff was appointed by the United States District Court, which receivership on June 30, 1921, was terminated and the receiver turned back the building in question to the plaintiff who ever since has been the sole owner and in control of the same.

During the time that the receiver was in possession of the building in question the leases expired and at the expiration of the first lease above mentioned the receiver extended it to December 31, 1924.

The second lease above mentioned was extended by the receiver on January 17, 1919, to December 31, 1924. On January 1, 1919, the lessee surrendered one of the rooms, but this circumstance is not material to the controversy herein.

One of the rooms covered by these leases was, on January 1, 1919, by a written lease sublet by the Shannon Grain Company for a term beginning on that day and ending December 31, 1921, to Harris Winthrop & Company, a partnership of which defendant, Arthur J. Izzard, was the resident manager. On April 17, 1919, the Shannon Grain Company by a written lease sublet one of the rooms in controversy to Thompson & McKinnon, a partnership of which the defendant, W. M. Giles, was the resident manager, for a term beginning May 1, 1919, and ending October 31, 1924. On April 17, 1919, the Shannon Grain Company by a written lease sublet one of the rooms in controversy to James E. Bennett & Company, a partnership of which the defendant, Tracy L. Cockle was the resident manager, for a term ending on October 31, 1924.

On June 30, 1921, the day of the entry of the order terminating the receivership, the plaintiff caused to be served upon the Shannon Grain Company, Harris Winthrop & Company, Thompson & McKinnon and James E. Bennett & Company, written notices demanding possession of the rooms in question on or before July 31, 1921.

The Shannon Grain Company paid the monthly rental reserved in the leases to August 1, 1921. The July rent, under the leases from the receiver to the Shannon Grain Company, was paid by the latter to plaintiff on August 3, 1921. These suits for unlawful detainer were begun on August 26, 1921.

The receiver had in his employ one H. B. Leavens who was manager of the building and collected the rents therefor. Leavens became the secretary of the plaintiff on June 1, 1921. The evidence shows that from the date of the subleases mentioned above made by the Shannon Grain Company until the end of the receivership, the receiver through Leavens, collected the monthly rent reserved in the leases to the Shannon Grain Company from it for the rooms in question with full knowledge of the subleases and the possession of the subtenants. In fact the evidence shows that Leavens verbally acquiesced in the Shannon Grain Company's subletting the rooms in controversy. In the case of the lease to Thompson & McKinnon, of which Giles was the resident manager, Mr. Shannon, the agent of the Shannon Grain Company, and Giles interviewed Leavens before the subletting and Leavens testified:

"I told them this, that—they wanted the receiver to consent, in a formal manner, to this subletting by Mr. Shannon, and I refused that, and I told them that I didn't think they were taking very much risk if they went ahead and made the deal, and I assured them if any trouble was made them in the future, it would be in connection

with a general move against subletting on the part of all of them, and that Mr. Shannon and his people would not be selected or made victims, anything of that sort."

Mr. Shannon testified that Leavens:

"told me to go ahead, that it seemed to have been the custom over there to sublease, and to go ahead and make the deal with Mr. Giles, and he didn't see I would be taking any chances."

Under the circumstances defendants insist that there was a waiver of the right of the plaintiff to declare a forfeiture under the leases by the acceptance of the rent by the receiver through Leavens, and that the plaintiff is bound by the waiver of the forfeiture on the part of the receiver as it is claiming through the leases made by the receiver and therefore, it took the leases *cum onere*.

Plaintiff insists that it is not to be bound by any action on the part of the receiver for the reason it had no right to interfere with the acts of the receiver in any respect; that he and not plaintiff was in charge and had full and exclusive custody and control of the building during the receivership. There is no question but that the receiver did have such custody and control and plaintiff's point might be well taken if it were now operating under the original leases made by it to the Shannon Grain Company. However, plaintiff's suit is founded upon the relationship of landlord and tenant (Elliott v. Abell, 39 Mo. App. 346) created under the leases made by the receiver and it must be held to stand in the shoes of the receiver and if the receiver waived the provisions of the leases made by him against the subletting, then said provisions, at the time the plaintiff received back the property, must be considered as having been stricken from the leases and the plaintiff has no right to insist upon the same. [Adamson-Flanagan Co. v. Kling, 191 N. Y. S. 32.] In this case plaintiff attempts to base a forfeiture on acts occurring while the receiver was in possession but refuses to be bound by any act of the receiver regarding the forfeiture, that is the waiver thereof. That plaintiff is relying on what occurred during the receivership is shown by the notices served on the defendants together with the complaints filed by plaintiff against the defendants. In these complaints it is alleged: "that by reason of said subletting said lease was thereupon forfeited and determined; that *thereafter, on June 30, 1921* (the date plaintiff received the building from the receiver), complainant duly made demand in writing upon the defendant Shannon Grain Company, etc."

The law in reference to a waiver of the kind now involved is well stated as follows:

"The waiver of a forfeiture most commonly occurs by an acceptance of rent which became due after a breach committed by the tenant; or by distraining therefor. (The acceptance of rent affirms the tenancy only during that period in respect of which the rent

was paid; and therefore the landlord may receive any rent which became due before the alleged forfeiture up to the day of such forfeiture, or may bring an action to recover it, without waiving his right to re-enter. It is only by receiving or demanding rent due since the forfeiture that such right is waived.) The waiver will result without reference to the amount of rent received, or to the sufficiency of the distress, but in order to make it a waiver, it is necessary that the landlord, at the time of accepting the rent, shall have knowledge of the fact that the condition has been broken. If, with this knowledge, he receives rent which has accrued subsequent to a breach of the condition, he again consents to and re-establishes the tenancy which it was competent for him to have avoided; and thereby precludes himself from taking advantage of the tenant's misconduct.'' [2 Taylor's Landlord & Tenant (9 Ed.), section 497.] [See also, 36 C. J., p. 603; Carnhart v. Finney, 40 Mo. 449; Grouch v. Wabash, St. L. & Pac. Ry. Co., 22 Mo. App. 315; Trauerman v. Lippincott, 39 Mo. App. 478; Mansur v. Chamberlin, 162 Mo. App. 155; Bobb v. Frank L. Talbot Theater Co. et al., 221 S. W. 372.]

We have examined the authorities cited by plaintiff on this point but none of them are inconsistent with the authorities which lay down the rule that acceptance of rent by the landlord after the cause of forfeiture has arisen but before it has been declared, waives the forfeiture, but that there is no such waiver by such acceptance after the forfeiture is made by re-entry. [ See 35 C. J., p. 1083; Lebow v. Hudson, 226 S. W. 968, 969, and authorities therein cited; 2 Taylor's Landlord & Tenant (9 Ed.), p. 92.] In the case of Gary Realty Co. v. Kelly, 278 Mo. 450, cited by plaintiff the continued possession of the tenant was not under the terms of the lease alleged to have been forfeited, but was pursuant to a new arrangement entirely.

The judgment is affirmed. *Arnold, J.*, concurs; *Trimble, P. J.*, absent.