Mart **LESTER** and Ed Lester, individually and as partners doing business as Lester Coal Company, Appellants,

v.

The **NATIONAL SHAWMUT BANK OF BOSTON**, a corporation, Appellee.

No. 7259.

United States Court of Appeals Fourth Circuit.

Argued Oct. 16, 1956.

Decided Nov. 7, 1956.

Joseph M. Crockett, Welch, W. Va. (Crockett & Tutwiler and J. Strother Crockett, Welch, W. Va., on brief), for appellants.

Howard R. Klostermeyer Charleston, W. Va. (Frederick L. Thomas, and Spilman, Thomas, Battle & Klostermeyer, Charleston, W. Va., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and SOBELOFF, Circuit Judges.

SOBELOFF, Circuit Judge.

This litigation was begun August 11, 1955 by the appellee, National Shawmut Bank of Boston, to obtain surrender of certain coal leases in McDowell County, West Virginia and Buchanan County, Virginia claimed by the appellants Mart Lester and his brother Ed Lester, individually and trading as Lester Coal Company, and an injunction against the appellants, forbidding them to exercise any rights in the property. The appeal is from an order granting this relief.

The appellants' claim rests upon a transfer, dated March 10, 1953, from Correale Mining Corporation to Mart Lester. Correale is itself the assignee of Hamill Coal Company, the original lessee of Shawmut Bank under leases made in 1944 and 1947.

19. Zalkind v. Scheinman, 2 Cir., 1943, 139 F.2d 895.

The instrument of March 10, 1953 concerned two leases from the appellee to Hamill, the assignor of Correale. The one made in 1947 expired by its terms when all the coal in the property was exhausted and this lease is not involved here. The other was made in 1944, and was for a term of twelve years, ending January 1, 1956, so that it has expired unless the renewal notice given by the appellants to counsel for the appellee on December 29, 1955 is effective.

In the District Court the Bank contended, unsuccessfully, that the transfer by Correale to Lester was invalid because it failed to comply with certain requirements of the original lease as to consent by the appellee, the original lessor. In this Court the appellee acquiesces in the District Court's ruling that the 1953 instrument is valid, but it still insists, as it did in the lower Court, that this instrument is not an assignment but a sublease or perhaps "something of even less dignity." Various reasons are assigned. Chiefly they are: (a) Correale retained the right to remove certain structures, and equipment at the end of the lease; (b) Correale did not transfer his entire interest but retained an interest in the premises transferred, namely a power to · terminate the lease and re-enter upon breach of certain covenants; and (c) Correale retained certain timber rights granted it in the lease from Shamut. Appellants reply that a lessee may assign part of its lease for the remainder of the term and that this constitutes an assignment *pro tanto* rather than a sublease, and that the other circumstances mentioned do not convert the transfer into a sublease.

The significance of the distinction in this case is that if the instrument is an assignment, the right of renewal reserved in the original leases passed to Lester; but not if it is a sublease. The Court held, as contended by the appellee, that the 1953 instrument was not an assignment but a sublease; that accordingly appellants did not succeed to any right of renewal Correale may have had, and so appellants' attempt to exercise the privilege of renewal was ineffective; and that appellants no longer have any rights in the property. Ruling that the 1953 instrument was a sublease the Court directed Correale, who was recognized as the lease holder, to execute and deliver a formal surrender of all rights under the coal leases in question and enjoined the appellants as prayed.

■ The question of assignment or sublease was vigorously debated before us. We need not decide it, however, because we think the disposition of the case made by the District Court is amply supported on another ground, namely that before December 29, 1955, when the appellants attempted to renew, they had forfeited their rights by non-payment of rentals due and by abandoning the lease through failure to prosecute mining operations continuously and in a diligent manner as required by the terms of the original lease and all relevant later documents.

■ Inasmuch as the consideration to the owner of the property was a tonnage royalty, it is not necessary to labor the importance to the appellee of faithful performance by the appellants of their obligation to work the coal mine energetically. One holding under such a lease either as lessee or as the lessee's transferee, whether by assignment or sublease, may not retain the property, excluding operation by others, yet not exploiting the mine himself. Martin v. Consolidated Coal & Oil Corporation, 1926, 101 W.Va. 721, 133 S.E. 626.

When the appellants took possession of the coal mine one of the existing structures there was a coal tipple used for preparing and shipping coal. The tipple was destroyed by fire on June 28, 1953, after only a few weeks of mining operations. Mining was never resumed. They failed to agree upon terms for the reconstruction of the tipple, and on August 13, 1953 Correale notified appellants that their contract of March 10, 1953 was terminated because of the latter's failure to perform their obligations. Correale proceeded to remove the remaining

equipment, and the appellants apparently raised no objection. Nor did appellants do anything on the property to resume the mining of coal, although they purchased equipment to mine elsewhere. In fact, appellants removed from the premises such equipment as belonged to them and withdrew all personnel.

In 1954 another fire occurred on the property in the coal seam on the property. Instead of proceeding to put out the fire, as might be expected of persons with an interest in the property and who entertain an intention at some later time to resume operations, Lester offered to rent the appellee a bulldozer at $10.00 per hour to extinguish the fire. Shawmut and Correale bore the expense.

Appellants' bargaining with Correale and with Shawmut for terms upon which appellants were willing to renew operations also appear to us to have been predicated on assumptions inconsistent with what might be expected of persons who regard themselves as having an existing interest in property and a recognition of obligations under a present lease. A review of the testimony, including the correspondence between the parties, leaves the impression that the appellants did not wish to be bound by the obligations of the agreement with Correale, because the necessary investment for a new tipple made the 1953 agreement unattractive. Neither Shawmut nor Correale was under obligation to build a new tipple. Seeking but failing to obtain better terms, the appellants abandoned the intention to restore the property and to proceed with mining thereon. Certainly they never tendered the minimum guaranteed rental due the Bank, which appellants were under obligation to pay if they meant not to abandon the mine.

For these reasons the question whether the instrument of March 10, 1953 was an assignment or a sublease need not detain us. In either case the appellants lost their rights in the property by ignoring their financial and other obligations.

It is true that the District Judge did not express his findings in terms of an abandonment by the appellants, but rather by Correale since, on the theory of the law which he followed, there was no assignment and the decisive fact was abandonment by Correale, the recognized lessee. Nevertheless, the facts found to constitute abandonment by Correale are the acts or omissions of Lester. If these findings of the District Court in respect to appellants' conduct constitute, as we think they do, abandonment by them, the form of the finding is not important. In substance it is a finding of abandonment by the appellants.

The original leases, as well as the March 10, 1953 document, contain the usual provisions for forfeiture for breach, upon giving written notice. On July 8, 1953 and again on August 13, 1953, in writing, Correale undertook to give such notice and to effect termination of appellants' rights. If we look upon the appellants as Correale's sublessees, these notices were sufficient. On the other hand, if appellants were assignees, answerable directly to the Shawmut Bank for breach of the original lease, then the institution of this suit was sufficient notice. In either event proper steps to effect forfeiture were taken well in advance of December 29, 1955, when the appellants attempted to exercise an option of renewal, without even tendering the over-due rent. The renewal notice seems to us a mere afterthought, a gesture made only after testimony had been taken in the case, on December 8, 1955, when it was known that others were interested in the property.

We declare of no effect the belated notice of renewal. The order of the District Court will be

Affirmed.