**C. F. DENNEY, Plaintiff-Appellant,**

v.

**TRADERS NATIONAL BANK OF KANSAS CITY, Missouri, and Burgner Jones, as Co-trustees, and Burgner Jones and Vincent Lee Humphreys, Individually, Defendants-Respondents.**

No. 51679.

Supreme Court of Missouri,
Division No. 1.

Nov. 14, 1966.

James C. Morris, Inghram D. Hook, Kansas City, for plaintiff-appellant.

R. Carter Tucker, Tucker, Murphy, Wilson, Lane & Kelly, Hoskins, King, Springer & McGannon, Roger T. Hurwitz, Walter J. Kennedy, Kansas City, for defendants-respondents.

Ben W. Swofford, Phillip L. Waisblum, Kansas City, for defendant-respondent Vincent Lee Humphreys.

HYDE, Judge.

Plaintiff brought suit for $150,000.00 actual damages and $150,000.00 punitive damages, alleging unlawful interference with and breach of a mining lease of 88 acres to plaintiff by defendants Traders National Bank (hereinafter called Bank) and Burgner Jones (hereinafter called Jones) as Co-trustees, and Jones individual-

ly. The suit was against the Bank and Jones and Vincent Lee Humphreys (hereinafter called Humphreys) individually; Humphreys being a subsequent lessee. The court sustained defendants' motion for summary judgment and entered judgment against plaintiff and for all defendants, from which plaintiff has appealed.

Plaintiff's claim is that after the Bank and Jones had made a lease to him and knowing this lease was "a present valid and subsisting lease," they made a lease to Humphreys "with the knowing purpose of interfering with or annuling the existing mining lease of plaintiff." The case was decided on the pleadings, depositions, interrogatories and answers thereto, admissions of record and affidavits, from which the court found that plaintiff, under the terms of his lease, "defaulted and after due notice, as per terms of the lease, said lease was terminated"; and "that there is no genuine issue in this case as to any material fact."

Jones owned a one-half interest in the property and the other half was subject to a trust of which he and the Bank were trustees. The material provision of plaintiff's lease was as follows: "1. The said party of the second part shall commence prospecting or mining operations on said land herein described within Six (6) Months from date hereof; provided, that if prospecting or mining operations have not been commenced by the 1st day of August 1960, the party of the second part shall pay parties of the first part the sum of One Dollar per acre per year, said payments to be made semi-annually, as rent or royalty, *said payments to begin at the last above mentioned date, and continue until such time as prospecting or mining operations shall have been commenced*; but in any event prospecting or mining operations must be commenced on said land within Three (3) Years from date hereof. * * * 9. In case of failure of second party to keep and perform the terms of this lease, the parties of the first part may give thirty days' written notice of the violation complained of, and if such violation or default

is not removed within said period said lease shall thereupon terminate, at the option of the first parties, which remedy shall be exclusive." (Emphasis ours.) The facts are that plaintiff never commenced any operations and on August 1, 1960 made the semi-annual rent payment required to be paid on that date. However, plaintiff did not make any payment on February 1, 1961 and the attorney for the Bank and Jones wrote the following letter to plaintiff on February 13, 1961:

"Mr. C. F. Denney
320 Moffett Street
Joplin, Missouri

"Dear Sir:

On behalf of Burgner Jones and Traders National Bank of Kansas City, Trustees under the will of Ruth Jones, deceased, and Burgner Jones, individually, you are hereby notified that you have failed to keep and perform the terms of that certain mining lease which you have entered into with the aforementioned parties, dated January 25, 1960. Said violation consists of the failure to make semi-annual payment of rent due February 1, 1961, in accordance with paragraph 1 of said lease.

Yours very truly,

/s/ Roger T. Hurwitz."

No payment being made by plaintiff, the attorney for these defendants wrote him again on March 17, 1961, as follows:

"Mr. C. F. Denney
320 Moffett Street
Joplin, Missouri

Re: Mining Lease dated January 25, 1960—Burgner Jones and the Traders National Bank of Kansas City, Trustees under Will of Ruth Jones, deceased, and Burgner Jones Individually, lessors, and C. F. Denney, Lessee

Dear Sir:

You are herewith notified that, having failed to remove the default complained

of in our notice to you of February 13, 1961, to-wit, failure to make semiannual payment of rent due February 1, 1961, the above mentioned lease is hereby terminated pursuant to the provisions of paragraph 9 thereof.

Demand is hereby made upon you for payment of rent due in the sum of $44.00 which said rent was due February 1, 1961.

Very truly yours,

/s/ Roger T. Hurwitz."

Thereafter, Jones received in an envelope, postmarked March 29, 1961, a check of plaintiff's wife dated March 14, 1961, which his attorney returned to plaintiff in the following letter dated April 6, 1961:

"Dear Mr. Denney:

We are returning herewith Check No. 196 dated March 14, 1961, payable to the order of Burgner Jones in the sum of $44.00 bearing the legend 'Lease Rental to July 25, 1961.' This check is drawn by Francis L. Denney on the First National Bank of Joplin. As we previously notified you in our letter March 17, 1961, the lessors had elected to terminate your lease on the Knight's station property for the reason that you were in default of rent payment and had not removed such default within 30 days from notice thereof. The enclosed check was forwarded to Mr. Jones under postmark dated March 29, 1961, and thus was received too late to remedy the default.

Very truly yours,

Roger T. Hurwitz."

No reply was received to this letter and on April 15, 1961, the Bank and Jones executed a mining lease to defendant Humphreys. As it turned out, Humphreys commenced no mining operations either and later was convicted of violation of a Federal statute concerning securities. On July 21, 1962 plaintiff brought suit against Humphreys for unlawful interference with his contract and on September 7, 1962 filed an amended petition including the Bank and Jones as defendants. Plaintiff had made a lease of the property to one Lester in April 1960 but he commenced no operations on it, as required to do within 45 days. Lester had unsuccessfully attempted to sublease to Humphreys.

Plaintiff's principal contentions are (1) that the letter of March 17 was insufficient as a notice of forfeiture because it was ambiguous and equivocal and in fact meant "if you pay up your rent your lease is not forfeited"; and (2) that in any event forfeiture was premature because, under the terms of the lease, plaintiff had until August 1, 1961 instead of February 1, 1961 to make the rental payment.

Considering (2) first, we rule against plaintiff's claim that he had until August 1, 1961 to pay. The lease specified an annual rental of one dollar per acre per year with payments commencing August 1, 1960 and required to be made semi-annually. Whether this was rent for the period from August 1, 1960 to February 1, 1961 or from February 1, 1961 to August 1, 1961, a payment was due February 1, 1961. In the case cited by plaintiff, Washburn v. Gillespie (CCA 8th), 261 F. 41, involving an oil lease, no date for payment of rent was specified but provided only that the lessee "agrees to complete a well on said premises within one year from the date hereof, or pay at the rate of forty dollars for each additional three months, such completion is delayed from the time above mentioned for the full completion of such well until a well is completed." The court said concerning the lessor's contention that the lease was forfeited because one quarterly payment was made nine days after the quarter began: "This is based on the theory that the lease required the quarterly payments to be in advance, which would make this payment due December 23, 1916. There is no such requirement in the lease." Nor was there any such forfeiture provision in the lease in that case such as Paragraph 9 of the lease herein.

In 2 Summers Oil and Gas 409, Sec. 340, it is said: "When the drill or pay lease expressly provides for the payment of delay rental in advance or at the beginning of the rental period, there can be no question as to when the rent is due and payable." Likewise we consider there can be no question under the express provisions of this lease (construing Paragraphs 1 and 9 together) that the required semi-annual rent was due on February 1 and August 1 of each year.

Whether such payments were for rent in advance for such periods (with the first six months free) or were for the six months just past (the first six months to be paid for if no operations were begun) is another question. Regardless of whether these payments were for back rent or rent in advance, the time they were to be made was definite. The question of whether the first six months was free is relevant only on the issue of the meaning and effect of the second paragraph of the forfeiture letter of March 17, 1961. The fact that the rent was stated as One Dollar per acre per year, to be paid semi-annually on a three-year lease, at least is a reasonable basis for a construction that rent was due for the entire first year.

Plaintiff's claim is that the second paragraph of the letter of March 17, 1961 stated an alternative to forfeiture. Defendants' claim is that the August 1, 1960 rent was for the first six months of the lease when plaintiff commenced no operations so that on February 1, 1961 plaintiff owed rent for the period of August 1, 1960 to February 1, 1961, which defendants were entitled to collect even after forfeiture. Defendants cite 51 C.J.S. Landlord and Tenant § 117(3), p. 707, stating "a demand for, or an action to recover, rent accruing before the ground of forfeiture existed does not constitute a waiver of the forfeiture." They also cite as so holding Mansur v. Chamberlin, 162 Mo.App. 155, 144 S.W. 510; Board of Trade Office Building Co. v. Shannon Grain Co., 223 Mo.App. 1199,

21 S.W.2d 913, 914, 915, and cases cited. It is said 58 C.J.S. Mines and Minerals § 190a, p. 408: "[F]orfeiture does not destroy the lessor's right to accrued rents"; see also 32 Am.Jur. 752, Landlord and Tenant, Sec. 886; Annotation, 109 A.L.R. 1268. That it was not defendants' intention to demand any rent due after the date of the forfeiture is clear from the positive declaration of the forfeiture in this letter of March 17, 1961, which we do not consider could be construed as presenting payment of rent as an alternative to the declared forfeiture but instead as a demand for rent claimed to have accrued. Furthermore, when plaintiff sent a check with the notation "Lease Rental to July 25, 1961" defendants refused to accept it and promptly returned it. We, therefore, hold there was no waiver of the forfeiture.

Plaintiff cites Independence Flying Service v. Abitz, Mo.Sup., 386 S.W.2d 399, which was ruled on the requirements of the common law to declare a forfeiture for nonpayment of rent. However, the lease in that case did not contain any such provision as Paragraph 9 of the lease herein involved which provided the method for declaring a forfeiture, stating "which remedy shall be exclusive." It is stated (58 C.J.S. Mines and Minerals § 190a, p. 408): "Under an express stipulation in many mining leases, the nonpayment of rents or royalties in accordance with the terms of the lease is ground for a forfeiture of the lease and reentry by the lessor." Defendants did comply with the provisions of Paragraph 9 of their lease by giving "thirty days' written notice of the violation complained of" by their letter of February 13, 1961, before declaring forfeiture in their letter of March 17, 1961. As to proper steps for forfeiture of a mining lease, see Lester v. National Shawmut Bank of Boston, USCA 4th, 238 F.2d 516, 518. A reason for enforcement of forfeiture in a mining lease is thus stated in an annotation on the duty of development of mineral rights, 60 A.L.R. 901: "A lease of land for the exploration and development of min-

erals is executed by the lessor in the hope and upon the condition, either express or implied, that the land will be developed for minerals. Hence, it would be unjust and unreasonable, and contravene the nature and spirit of the lease, to allow the lessee to continue to hold the land for any considerable length of time without making a reasonable effort to develop it according to the express or implied purpose of the lease, even though there is a provision in the contract for the payment of a minimum royalty." (See also Annotation, 76 A.L.R.2d 721.) In Brooks v. Gaffin, 192 Mo. 228, 90 S.W. 808, forfeiture was enforced for violation of the provisions of a lease, this court saying: "Whatever may be the rule in other states, and whatever expressions may be found in the earlier cases, * * * the later decisions in this state fully sustain the doctrine that, where the deed contains a provision for forfeiture for breach of an essential condition of the deed, ejectment will lie for the possession of the premises."

Plaintiff also claims the forfeiture of his lease resulted from a conspiracy of the Bank and Jones with Humphreys who had first negotiated with plaintiff for a sublease from him apparently through one Lester, a mining engineer. Plaintiff had made a sublease of the land involved, offering also adjoining land owned by him, to Lester who prepared a sublease to Humphreys which Humphreys never executed. It appears that both plaintiff and Lester were to get substantial additional royalties, over those required by plaintiff's lease, if Humphreys subleased through them. The Bank and Jones did lease the land involved to Humphreys on April 15, 1961. Humphreys says there was no evidence to connect him with either the default of plaintiff on his lease or the termination of plaintiff's lease by the Bank and Jones. Humphreys made contact with the Bank and Jones through Cecil Veatch of Webb City (engaged in real estate, insurance and loan business) who looked after the Jones' interests in the area. The Bank and Jones say that the mining land was never occupied by plaintiff; that plaintiff was never prevented by anyone from going on the land or from mining the land while the lease to him existed; and that there was no evidence of any concerted action or knowledge of each other between them and Humphreys before plaintiff defaulted. They say there is no basis for a conspiracy action against them, citing Rosen v. Alside, Inc., Mo.Sup., 248 S.W.2d 638, 643, in which we said: "A civil conspiracy is an agreement or understanding between two or more persons to do an unlawful act, or to use unlawful means to do an act which is lawful. * * * The gist of the action is not the conspiracy, but the wrong done by acts in furtherance of the conspiracy or concerted design resulting in damage to plaintiff. * * * Conspiracy does not ordinarily give rise to a civil action unless something is done pursuant to it which, without the conspiracy, would create a right of action against the defendants severally."

■■ The trouble with plaintiff's claim of conspiracy is that there is no evidence of an unlawful act by his lessors. They had the right under the plain terms of plaintiff's lease to terminate his lease when he did not make the payment due February 1, 1961. Likewise Humphreys had the right to contract with the Bank and Jones for a lease after the lease with plaintiff had been terminated. There is nothing to show that either the Bank, Jones or Humphreys had anything to do with plaintiff's failure to make the payment due February 1, 1961. Perhaps at one time, plaintiff thought Humphreys would take a sublease under plaintiff's sublessee, Lester, but the 45 days for commencing operations required under that lease had expired many months before plaintiff's February 1, 1961 payment was due; in fact before his August 1, 1960 payment was due. Thus these negotiations afforded plaintiff no basis to hold without making the required payment. It was plaintiff's obligation to have operations commenced on the land prior to February 1, 1961 or to make the payment due on that

date and he did neither. We find no merit in plaintiff's further contention that the Bank and Jones had no authority to terminate the lease to plaintiff and make a lease to Humphreys without permission of a court of equity. If they had authority to lease to plaintiff as he contends, they had authority to lease to someone else when his lease was terminated. Therefore, we hold the trial court correctly determined that plaintiff "defaulted and after due notice, as per terms of the lease, said lease was terminated; and that the lease from owners of land to Vincent Lee Humphreys was entered into after termination of the lease with plaintiff and the Court finds that there is no genuine issue in this case as to any material fact."

The judgment is affirmed.

All concur.