FRANKLIN SAVINGS INSTITUTION, Respondent, v. APPOLONIA HEINSMAN, Appellant.

### February 28, 1876.

The rule by which personal property, when lost or stolen, may be reclaimed by the owner, under all circumstances, does not apply to negotiable securities. Upon grounds of public policy a *bona fide* purchaser of negotiable paper, for value, without notice, becomes the owner of the same, notwithstanding any defect in the title of the person from whom he acquired it.

APPEAL from St. Louis Circuit Court.
*Reversed and remanded.*

*Aug. Rebenack*, for appellant, cited : Horton v. Bayne, 52 Mo. 531 ; Hughes v. McAllister, 15 Mo. 296 ; Benoist v. Siter, 9 Mo. 657 ; Chitty on Bills, 221, 222 ; Hall v. Wilson, 16 Barb. 548 ; Hamilton v. Marks, 52 Mo. 78 ; Murry v. Gardner, 2 Wall. 121 ; Welch v. Sage, 47 N. Y. 143 ; Brush v. Scribner, 11 Conn. 388.

*J. Taussig*, for respondent, cited : Murry v. Gardner, 2 Wall. 110 ; Savey v. Hays, 20 Iowa, 25 ; Coursey v. Curtis, 18 Ga. 237 ; Graff v. Shannon, 7 Iowa, 508 ; Kenhue v. Williams, 1 Duer (N. Y.), 597 ; Pars. on Con. (4th ed.) 436 ;

Pars. on Con. (5th ed.) 520; McGrew *v.* Browder, 14 Mart. L. (La.) 17; Roland *v.* Gundy, 5 Ohio, 202; Browning *v.* McGill, 2 Har. & J. (Md.) 308; Dame *v.* Baldwin, 8 Mass. 518; Lance *v.* Cowan, 1 Dana (Ky.), 195; Ventress *v.* Smith, 10 Pet. 161; Hoffman *v.* Carow, 22 Wend. 285; White *v.* Sweeney, 4 Daly (N. Y.), 223; New Orleans *v.* Strauss, 25 La. 50; Graves *v.* American Exchange Bank, 17 N. Y. 208.

LEWIS, J., delivered the opinion of the court.

This was a suit in replevin for the recovery of five negotiable promissory notes of the value of $850. Plaintiff obtained possession of the notes under an order of delivery, and recovered judgment in the Circuit Court.

The testimony tended to prove that the notes, indorsed in blank, were in the lawful custody of the plaintiff for collection; that long before their maturity they were stolen from plaintiff by one Rodell, who, adding his own indorsement, sold and delivered them to defendant. Defendant offered to prove that she paid value for the notes before their maturity; that she received them from Rodell in good faith, and used due and reasonable caution in taking them, and that plaintiff had proceeded to hold Rodell, who was one of plaintiff's employés at the time of the larceny or embezzlement, pecuniarily responsible for the same. This testimony was excluded by the court, and, under a general instruction to that effect, the jury rendered a verdict for the plaintiff.

The plaintiff's counsel refers us to Parsons on Contracts, and other authorities, for the general doctrine that, "if a mere finder, and still more a thief, sells what he has found or stolen, the original owner may reclaim his property, wherever it may be, and take it without any payment to the holder, any more than if that holder were the thief himself." That this is the general rule as to personal property no one will deny. But, from the case of *Miller* v. *Race*, which was decided by Lord Mansfield, to the present time,

commercial paper has universally been held to constitute an exception. Upon grounds of public policy, growing out of the commercial necessities and wants of the community, a *bona fide* purchaser of negotiable paper for value becomes the owner of the same, notwithstanding any defect in the title of the person from whom he acquired it. A distinction is here suggested between such defects of title as arise out of mere fraud and those which originate in felony. Where other descriptions of personal property are concerned, such a distinction is recognized for some purposes. But none has ever been made in cases of negotiable paper.

The English and American authorities by which the exception mentioned is established are very numerous. They are so uniform in tenor and effect that but two or three need be here specially noticed.

Story, in his treatise on Bills of Exchange, after remarking upon the operation of a blank indorsement, says: "Another consequence of this doctrine is that if the bill should, after such blank indorsement, be lost or stolen, or fraudulently misapplied, any person who should subsequently become the holder of it *bona fide* for a valuable consideration, without notice, would be entitled to recover the amount thereof, and hold the same against the rights of the owner at the time of the loss or theft." Here he refers to a long list of English authorities.

In *Hall* v. *Wilson*, 16 Barb. 550, a promissory note was stolen from the desk of the maker by a laborer in his employ, and transferred, for value, to an innocent purchaser. The court, upon a careful review of the authorities, declared the rules, a conformity with which will entitle such a purchaser to hold the note against the rights of the loser or original owner. They may be thus epitomized: (1) he must have acquired the title in good faith; (2) he must have become the purchaser for a full and fair consideration; (3) the note or bill must have been taken by the holder in the usual course of his business; (4) it must be taken with-

out notice to him who receives it of the defect or infirmity of title in him who transfers it. These elements being all present, the rights of the holder will be sustained by the courts against all the world. Of course, as affecting the question of notice, the purchase of the note or bill must have been made before its maturity.

In *Murry* v. *Lardner*, 3 Wall. 121, the fire-proof safe of Lardner had been broken open in the night-time, and three coupon bonds stolen therefrom. These were negotiated in Wall street on the following morning. It was held that the purchaser of them in good faith was unaffected by want of title in the vendor. Swayne, J., delivering the opinion of the court, said: "The general rule of the common law is that, except by a sale in market overt, no one can give a better title to personal property than he has himself. The exemption from this principle of securities transferable by delivery was established at an early period. It is founded upon principles of commercial policy, and is now as firmly fixed as the rule to which it is an exception." Reference was made to the case of *Gill* v. *Cubitt*, 3 B. & C. 466, wherein Abbott, C. J., had instructed the jury that, if the plaintiff had taken the bill under circumstances which ought to have excited the suspicion of a prudent and careful man, then, notwithstanding he had given the full value for it, they ought to find a verdict for the defendant. The United States Supreme Court denies this doctrine, and approves that of Lord Denman, in *Goodman* v. *Harvey*, 4 Ad. & E. 870, which gave to the former "a final blow." The latter formed the basis of the decision in *Goodman* v. *Simonds*, 20 How. 343, in which "the subject was elaborately and exhaustively examined, both upon principle and authority." It results that the following is the "settled law" of that august tribunal touching commercial securities transferable by delivery:

"The party who takes such paper before due for a valu-

able consideration, without knowledge of any defect of title, and in good faith, holds it by a valid title against all the world.   Suspicion of defect of title, or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker at the time of the transfer, will not defeat his title. That result can be produced only by bad faith on his part. The burden of proof lies on the person who assails the right claimed by the party in possession."

If it be possible to go a step further for the protection of a *bona fide* purchaser of such paper, this was done in the case of *Seybel* v. *The National Currency Bank*, 54 N. Y. 288.   There the bonds were stolen from plaintiff in the evening, and printed notices of the theft, describing the bonds, were laid on the defendant's desk the next morning. Afterwards, in the course of the same forenoon, defendant purchased the bonds from an unknown party.   The printed notices of the theft proved insufficient to impair the title acquired by defendant, in the absence of direct proof of bad faith in the purchase.

In view of the principles thus settled by the highest authority, it seems clear that the defendant in the present case offered to prove more than was necessary for a successful defense.   The court erred, therefore, in excluding her testimony, and, for this error, the judgment must be reversed and the cause remanded.   The other judges concur.