Fogg v. School District.

VENDOR and
vendee: contract
of sale: letter:
receipt.

---

ANNA B. FOGG, Respondent, v. SCHOOL DISTRICT OF SEDALIA, Appellant.

| 75 | 159 |
|----|-----|
| 79 | 494 |

| 75 | 159 |
|----|-----|
| 93 | ³134 |

### Kansas City Court of Appeals, May 2, 1898.

1. **Bills and Notes:** PAYMENT BEFORE MATURITY: SUBSEQUENT REISSUE.   Payment of a negotiable instrument can only be made with safety at or after maturity unless the instrument is canceled at the time, and should it subsequently before maturity reach the hands of a *bona fide* holder for value without notice such holder can enforce a second payment; and where an agent to refund certain bonds of a school district after taking up such bonds sold them for value to innocent parties, the district is liable for such bonds.

2. ———: DELIVERY: FRAUD. Delivery is an essential requisite to the validity of a promissory note, but if the maker negligently, or even induced by fraud, allows it to get into the hands of an innocent purchaser for value, he will be liable.

3. ———: NEGOTIABILITY: OPTION AS TO PAYMENT. Bonds due in twenty years, but redeemable after five years, are negotiable.

*Appeal from the Johnson Circuit Court.*—HON. W. W. WOOD, Judge.

AFFIRMED.

G. W. BARNETT and SANGREE & LAMM for respondent.

(1) Before plaintiff purchased the bond from which the coupons sued on were detached, the defendant had exercised its option to pay and had paid said bond to the then owner and holder and the same was surrendered to J. C. Thompson as the agent of defendant. Therefore said bond was dead and had no force or effect as an obligation of defendant, and the said Thompson could not thereafter reissue same so as to impart validity thereto even in the hands of a *bona fide* purchaser for value. Board of Education v. Sinton, 41 Ohio St. 504; Branch v. Sinking Fund, 80 Va. 427; Bank v. Suspension Bridge, 73 Hun. 590, see opinion 594; Mayor v. Ray, 19 Wall. 468. (2) The bonds in question having been paid by defendant, and having come into its possession as redeemed paper, the same could not thereafter become operative, even in the hands of an innocent holder for value, unless the same were legally delivered by defendant or by its authority. Even negotiable paper has no validity in the hands of a *bona fide* purchaser unless the same has been delivered by the maker. Simonton on Municipal Bonds, sec. 144; Bank v. Village of Ashley, 91 Mich. 670, see opinion 680; Sedwich v. McKim, 53 N. Y. 315; Bank

v. Suspension Bridge, 73 Hun. 590; Hall v. Wilson, 16 Barb. 548; Chipman v. Tucker, 38 Wis. 43; Roberts v. McGrath, 38 Wis. 52; Roberts v. Wood, 38 Wis. 60; Palmer v. Poor, 121 Ind. 135; Dodd v. Donne, 71 Wis. 578; Andrews v. Thayer, 30 Wis. 228; 1 Randolph on Com. Paper, sec. 220, p. 339; Welch & Harvey v. Dameron, 47 Mo. App. 222. (3) The bonds in question are not negotiable instruments, and are open to all defenses, because they were uncertain as to time of payment, being redeemable at the pleasure of the district at any time after five years. Chouteau v. Allen, 70 Mo. 290; Way v. Smith, 111 Mass. 523; Hubbard v. Mosley, 11 Gray, 170; Texas v. White, 7 Wall. 700; Mahoney v. Fitzpatrick, 133 Mass. 151; Sultz v. Silva, 119 Mass. 137; Bank v. Bynum, 84 N. C. 24; Vette v. La Barge, 64 Mo. App. 179; Bank v. McRay, 106 Ill. 292; Bank v. Strother, 28 S. C. 504; Alexander v. Thomas, 71 Eng. Com. Law (16 Q. B.), star p. 333; Ins. Co. v. Bill, 31 Conn. 534; Bank v. Carson, 60 Mich. 432; Lamb v. Story, 45 Mich. 488; Brooks v. Hargraves, 21 Mich. 254; Miller v. Poage, 56 Iowa, 96.

GEO. P. B. JACKSON and JOHN MONTGOMERY, JR., for respondent.

(1) The plaintiff is shown by the evidence to have bought the bonds in good faith, for value, before maturity, and there is no evidence in any manner impeaching the utmost good faith on her part. Hamilton v. Marks, 63 Mo. 167; Edwards v. Thomas, 66 Mo. 483; Mayer v. Robertson, 93 Mo. 122; Johnson v. Mc-Murray, 72 Mo. 282; Shoe & Clothing Co. v. Crosswhite, 124 Mo. 39. The holder of such paper has to show that he is free from negligence in the purchase, or that he had no knowledge of the facts which impeach

VOL. 75 app—11

the original validity of the securities. Carson v. Porter, 22 Mo. App. 183; Jones v. Burden, 56 Mo. App. 203; Campbell v. Hoff, 129 Mo. 323. (2) The alleged payment and redemption of the bonds by Thompson, if true as claimed by appellant, did not destroy their validity. It did not extinguish the contract or relieve the defendant of liability. Daniel on Neg. Inst., sec. 1233; Randolph on Com. Paper, sec. 680; Story on Bills, secs. 180, 415; Thompson on Bills, sec. 246; Byles on Bills, secs. 173, 356; Chitty on Bills, sec. 446; Edwards on Bills, sec. 548; Sater v. Hunt, 66 Mo. App. 528; Grant v. Kidwell, 30 Mo. 457; Kelly v. Staed, 136 Mo. 433; Bank v. Thompson, 124 Mass. 506; Jordan v. Furlong, 19 Ohio St. 96; Bank v. Johns, 80 Ill. 542; Dorse v. Gale, 83 Ill. 136; Underhill v. Abwater, 27 N. J. Eq. 19. There is no distinction between individuals and municipalities in the rules applicable to commercial paper. When municipalities issue commercial paper they are as much bound by all the rules of commercial law as individuals. Randolph on Com. Paper, secs. 348, 350; Tiedeman on Com. Paper, sec. 132; 1 Daniel on Neg. Inst., sec. 436; Murray v. Charlestown, 96 U. S. 445; Cromwell v. Sac County, 96 U. S. 51. According to the appellant's contention, the bonds, when paid and redeemed by Thompson as their agent, remained on his hands, were never surrendered to any officer of the defendant school district, no marks were put on the bonds to indicate they were paid or canceled, and they were sold by Thompson, while in his hands, to innocent purchasers. R'y v. Sprague, 103 U. S. 760; Bowditch v. Ins. Co., 141 Mass. 296; Copper v. Jersey City, 44 N. J. L. 634; Daniel on Neg. Inst., secs. 769, 792; State v. Wells, Fargo & Co., 15 Cal. 340; 1 Smith, Leading Cases, Hare & Wallace's notes, point 2, p. 750; side p. 609; Bank v. Hinsman, 1 Mo. App. 338. (4) As between the parties to a bill,

delivery is essential to its validity—but the claim of any want of delivery has no support under the facts in this case. Savings Inst. v. Heinman, 1 Mo. App. 338; State to use v. Potter, 63 Mo. 212; State ex rel. v. Modrel, 69 Mo. 152; State ex rel v. Baker, 64 Mo. 167; State v. McGonigle, 101 Mo. 362; Briggs v. Ewart, 51 Mo. 245; Shorts v. Overjohn, 60 Mo. 305; Bank v. Clark, 52 Mo. App. 593; Bank v. Gay, 114 Mo. 209; Terrell v. Hunter, 21 Mo. 435; Ayers v. Milroy, 53 Mo. 516, separate opinion of Judge Napton on page 517; Shoe & Clothing Co. v. Crosswhite, 124 Mo. 36; Cooke v. U. S., 91 U. S. 389; Morgan v. U. S., 113 U. S. 490; Murry v. Lardner, 2 Wall. 121; R'y v. Sprague, 103 U. S. 760. Full integrity must be given to the principle which protects innocent purchasers of negotiable securities. Sybel v. Bank, 54 N. Y. 290; Welch v. Sage, 47 N. Y. 146; Ewertson v. Bank, 66 N. Y. 14; Cullins v. Gilbert, 94 U. S. 753; Wheeler v. Gould, 20 Pick. 545. (5) The option to pay the bonds "in twenty years after date, redeemable at the pleasure of the school district at any time after five years from the date thereof," does render them non-negotiable. Bank v. Skeen, 29 Mo. App. 122; s. c., 101 Mo. 687; School Dist. v. Hall, 113 U. S. 140; Morgan v. U. S., 115 U. S. 490; Loan & Trust Co. v. Motor Road Co., 51 Fed. Rep. 840.

GILL, J.—This is a suit on certain interest coupons of a bond issued by defendant in January, 1883. No question is made as to the original validity of the bond; but the defense is, that the same STATEMENT. was paid off by and through J. C. Thompson, a former banker at Sedalia, who, it is claimed, fraudulently and feloniously reissued the bond after it was paid off and taken up by him, and that plaintiff acquired said bond with notice of the facts. The

evidence set out in the record is quite voluminous, and much of it immaterial to the real issues involved. That our opinion may be understood, we deem it necessary to give only a brief statement of the more prominent features of the controversy.

The bond in question was one of a series of $30,000 issued by the defendant school district in January, 1883. They were what is known as 5-20 bonds, that is were due in twenty years after date of issue, with an an option in the district to pay any time after five years. In July, 1889, the board of education concluded to issue a new set of bonds, bearing five per cent interest, and with the proceeds of the sale thereof pay off the old issue which bore six per cent. To this end the district advertised for bids on the new issue, and said J. C. Thompson in his own name (though in fact acting for a New Jersey insurance company) was the highest bidder and became the purchaser. At that time Thompson seems to have been a business man of high standing and was the president and managing officer of the First National Bank of Sedalia. In July, 1889, the new issue of bonds was given over to Thompson, who at once sent them to the insurance company at Newark, New Jersey, which by Thompson's direction deposited the $30,000 with the American Exchange National Bank of New York for the credit and to the account of Thompson's bank at Sedalia. This disposition of the money seems to have been with the assent of the defendant school board; and it was intended to use the money in taking up the old issue, which was payable at said American Exchange National Bank. The evidence tends to prove (and for the purposes of this case we shall assume it to be a fact) that Thompson was relied on as the agent of the school district to use the proceeds arising from the sale of the last bond issue in taking up the old bonds; the $30,000

was left with him for that purpose. Thompson was expected to pay off and take up the old issue of bonds and return them to the school board for cancellation.

It seems that the holders of a large portion of these bonds of the 1883 issue, and who lived at St. Louis, demanded the right to take the new issue of bonds, in place of the old, and a law suit followed, resulting however adversely to the claim—the court holding that the school district had the right to pay the old issue in money. At that time the bond in question was held by the St. Louis parties, and there is evidence tending to show that the holder thereof turned it and others over to Thompson who paid the amount due thereon. There is also some evidence tending to prove (and we shall assume it to be a fact) that Thompson thereafter (in the year 1893) sold this and other bonds of the same issue to Marshall & Company, bankers in Pennsylvania, and who paid therefor ninety-eight cents on the dollar. Marshall & Company immediately thereafter sold these bonds to plaintiff for a small advance on the price paid Thompson. We may as well state here that there was no evidence worthy of mention, to impeach the good faith of plaintiff nor her agent, nor indeed of Marshall & Company in the purchase of said bonds. Nor was there anything within their knowledge tending to excite suspicion even as to the validity of the bonds, or that they had ever been called in or paid off. It is true that when the interest on the bonds for the year 1893–1894 matured the coupons were, by Thompson's request, sent to him at Sedalia for payment, but the reasons for this were fully explained, and besides it seems to have been not an unusual practice. Subsequent events however show Thompson's reason therefor. For as he was perpetrating a fraud on those who had trusted him, and was selling bonds which he was only authorized

to pay off, his purpose was clearly to avoid an expos-
ure sure to follow if the coupons had been presented
where, according to their face, they were payable.

The villainy of Thompson was not disclosed until
in May, 1894, when his bank at Sedalia failed and he
left the country. During the entire time that he had
this funding business in his hands—from July, 1889,
to May, 1894—the defendant's officers had reposed
such confidence in him that he was not called to ac-
count for and turn over the old issue of bonds which
he was supposed to have paid off. In answer to occa-
sional inquiries Thompson said to certain of the direct-
ors that the old bonds were not then *all in* and that as
soon as they were he would turn them all over to the
school board. It appears, however, that this was a
mere fraudulent pretense, and that he (Thompson)
was at the time continuing the bonds in circulation by
selling them to innocent third parties.

On a trial before the circuit court, without the aid
of a jury, there was judgment for plaintiff and defend-
ant appealed.

This is clearly a case where one of two innocent
parties must suffer from the fraudulent and felonious
act of a third party. The defendant school district,
through its officers, attempted to fund or
rather pay off and redeem the bond issue
of 1883. To accomplish this, said offi-
cers, in 1889, executed and sold to
Thompson a like amount of funding bonds bearing a
lower rate of interest than the first issue. These last
bonds were sold at a premium which Thompson paid
to the board, but by mutual agreement of the board
and Thompson the latter was permitted to retain the
$30,000 with which he was to take up and turn over to
the board for cancellation the old issue, which were
then redeemable at the option of the school district.

BILLS and notes:
payment before
maturity; subse-
quent reissue.

Though the evidence in this respect is weak, we now assume that Thompson did take up the bond in question. He did not, however, turn it over to the school district for cancellation, but instead sold it to an innocent third party in the state of Pennsylvania, who in turn for full value sold to plaintiff who was likewise innocent of Thompson's fraudulent conduct or that the school district had attempted to exercise its option to pay off said bonds. On these facts the trial judge held the defendant liable, and in our opinion he was clearly right. As already stated, the original validity of the bonds is unquestioned. They were, too, negotiable securities of the highest grade. Payable to bearer, they invited confidence and imported negotiability and to be transferable from hand to hand as the best of commercial obligations; they were not yet due, and therefore gave no warning of any dispute as to their obligatory force.

Conceding that these bonds had been once paid, yet there was nothing to indicate it—no marks of cancellation or other circumstances to excite inquiry or suspicion even. Speaking of payment, Daniels, in his able treatise on Negotiable Instruments (vol. 2, sec. 1233), says, that it (payment) "can only be made with perfect safety at or after maturity of the instrument, unless the payor receives it in his hands and cancels it; for a payment before maturity is not in the usual course of business; and should the bill or note afterward, and before maturity, reach the hands of a *bona fide* holder for value, without notice, such holder could enforce a second payment." And also same author, volume 1, section 769a. So in Randolph on Commercial Paper (vol. 2, sec. 680) it is said: "Where a bill or note is paid before maturity and afterward indorsed over to a *bona fide* purchaser for value before it matures, it will still be a valid security

in his hands.   Such a payment will amount to no
more than a discounting of the bill.   To give it effect
as an extinguishment of the instrument would impede
the circulation and destroy the commercial value of
such paper by destroying its negotiable character.   To
give it this effect a memorandum of the payment must
be made on the instrument itself.''

These principles are peculiarly applicable to the
case at bar.   For admitting that defendant paid the
bonds in question, they were not delivered up and can-
celed as they should have been, but were allowed to
rest in the custody of Thompson who continued them
in circulation until they reached the hands of this
plaintiff as, an innocent purchaser for value.   It was, of
course, Thompson's duty, when acquiring the bonds
with the money of the district, to deliver up the same
into the hands of the school board for cancellation.
But instead he abused his trust, sold them to innocent
parties and thereby continued the bonds in circulation.
Who then should suffer the loss brought about by the
fraudulent conduct of this agent?   Is it not proper to
apply the rule that where one of two innocent parties
must suffer by the act of a third, that he who enabled
such third party to commit the wrong should bear the
loss rather than the other party.   As bonds of the
school district were paid off or redeemed, the statute
law of this state (section 7895) requires that ''such
bonds shall be burned in the presence of a majority of
the members of the board of education and two other
credible persons as witnesses of the fact, and the sec-
retary or clerk of the board shall record in the books
of the school district a description of the bonds so
destroyed, etc.''   But here none of these bonds were
destroyed, but they were allowed to remain in the hands
of an outside third party on the pretext frequently
uttered by said party during the five years that said

bonds had not *all* been paid, and that as soon as they were all taken up he would turn them over to the board. The board of education knew during these several years that a large portion of the bonds had been taken up, and Thompson so advised them; it was then manifestly their duty under the statute to destroy these. They were, however, permitted to remain with Thompson, who was clothed with apparent title and all the evidences of absolute ownership. And if then the school district is to be treated as other makers of negotiable paper (and which must be the rule), then clearly it must suffer the consequences of its own negligence. We do not mean to impute anything but the best of motives to the members of the board; they are citizens of the highest character and standing. But the courts should not permit plaintiff to suffer a loss resulting from a misplaced confidence reposed by the district in its agent or depositor, or charge said plaintiff with the consequences of the board's negligence.

Defendant's contention is that when Thompson paid off and took up the school bonds they were as dead, unexecuted paper in his hands, and that he could not revive the same by a subsequent reissue. As well answered by plaintiff's counsel, this would ——: delivery: be a meritorious defense if the suit was fraud. between the original parties or if the paper was even non-negotiable; but it should be of no effect when interposed to defeat a good faith purchaser of negotiable paper transferred for value before maturity. It is true that delivery is an essential requisite to the validity of a promissory note; but if the maker of a negotiable note shall, before its maturity, negligently allow it to enter into the commercial transactions of the country and get into the hands of an innocent purchaser for value, then the title of such *bona fide* holder will be as perfect and complete as though a

voluntary delivery had been made in the first instance. And the rule is the same, too, whether the instrument was procured from the maker by fraud or by the commission of a felony. Savings Inst. v. Heinsman, 1 Mo. App. 336, and other cases cited in plaintiff's brief.

In the case just cited Judge Lewis, speaking for the court, says: "Upon grounds of public policy growing out of the commercial necessities and wants of the community, a *bona fide* purchaser of negotiable paper for value becomes the owner of the same, notwithstanding any defect in the title of the person from whom he acquired it. A distinction is here suggested between such defects of title as arise out of mere fraud and those which originate in felony. Where other descriptions of personal property are concerned such a distinction is recognized for some purposes. But none has ever been made in cases of negotiable paper. * * * The party who takes such (negotiable) paper before due for a valuable consideration, without knowledge of any defect of title, and in good faith, holds it by a valid title against all the world. Suspicion of defect of title, or the knowledge of circumstances which would excite suspicion in the mind of a prudent man, or gross negligence on the part of the taker at the time of the transfer, will not defeat his title. That result can be produced only by bad faith on his part." The foregoing has been the law in this state since the second decision of Hamilton v. Marks, 63 Mo. 167.

It is however suggested by defendant's counsel that the bonds here in question were not negotiable instruments, in that the time of payment is not certain—they being redeemable at the maker's option at any time after five years. The basis of this contention is found in Chouteau v. Allen, 70 Mo. 290. But the force of that decision has been broken by a later announcement of the

——: negotiability: option as to payment.

supreme court. Bank v. Skeen, 101 Mo. 683. The note there under consideration was a promise to pay "on or before the first day of September, 1885," and the objection was, as here, that the option given the maker to pay at any time before said date had the effect of destroying the certainty of time necessary in a negotiable instrument. This court had the same case under consideration (29 Mo. App. 115) and the majority held the paper negotiable; but one of the judges deeming the decision in conflict with Chouteau v. Allen, the cause was certified to the supreme court where the majority decision was sustained. Judge BARCLAY, speaking for the court, says: "Having in view the reasons on which these rules (concerning negotiability) are founded, it would seem obvious that a certainty of ultimate payment should not be considered impaired by the intervention of an option in favor of the maker, to discharge his obligation at an earlier time. The paper still retains a fixed date when the promise to pay must be performed." Under this decision the point made here must be ruled against the defendant.

In briefing this case, counsel for both sides have with much ability and industry taken a wide range, and cited numerous authorities. These have all been examined, but we deem it unnecessary here to further refer to or comment on the same. The following cited by plaintiff's counsel seem to be in harmony with the decision now rendered. Copper v. Mayor, Etc., 44 N. J. L. 634; California v. Wells, Fargo & Co., 15 Cal. 336; Cromwell v. Sac County, 96 U. S. 51; Grant v. Kidwell, 30 Mo. 455; State v. McGonigle, 101 Mo. 353; Shirts v. Overjohn, 60 Mo. 305.

On the other hand, Board v. Sinton, 41 Ohio St. 504, and Branch v. Sinking Fund, 80 Va. 427, cited by

defendant's counsel seem to conflict with what we understand the law to be.

The judgment of the circuit court will be affirmed. All concur.