## ICKENROTH, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

### St. Louis Court of Appeals, November 17, 1903.

1. **Carriers of Passengers: EJECTING PASSENGER: ASSAULT AND BATTERY.** Though defendant's conductor was, on account of plaintiff's conduct, justified in ejecting plaintiff from his car, violence to plaintiff's person when none was required, or greater violence than necessary to make him depart, is equivalent to an assault and battery for which defendant is liable.

2. ———: ———: **DISORDERLY PASSENGER.** It is the duty of carmen to eject passengers who do not deport themselves with decency and decorum, or use vulgar or profane language, or are guilty of rude behavior, using no more force than is reasonably necessary under the circumstances for that purpose.

3. ———: ———: **ASSAULTING CONDUCTOR.** If defendant's conductor was first assaulted by plaintiff, he had a right to defend himself and use such force as was necessary to repel such assault.

4. ———: ———: **EXEMPLARY DAMAGES.** Where there is evidence that the conductor's assault on plaintiff was wanton and malicious, exemplary damages may be assessed against defendant as his responsible employer.

5. ———: ———: ———: MALICE. Malice, on which exemplary damages may be predicated, in an action for assault, can be imputed only when the unlawful act was coupled with intentional wrong.

6.. ———: ———: ———: ———: It is proper, if not essential, to charge a jury, when requested, to consider whether an assault was characterized by wanton or malicious violence, in determining the issue of exemplary damages, though it is not error to give the conventional definition of malice; the intentional doing of a wrong act without just cause or excuse.

Appeal from St. Louis City Circuit Court.—*Hon. J. R. Kinealy*, Judge.

REVERSED AND REMANDED.

*Boyle, Priest & Lehmann* and *Geo. W. Easley* for appellant.

(1) The second instruction given for the plaintiff is erroneous. It instructs the jury that if the assault made by the conductor "was made with malice," then the jury might assess exemplary damages in favor of the plaintiff in addition to the actual damages. Malice is defined by the instruction to mean "that condition of mind which makes a person disregard the rights of others by doing an act without just cause or provocation." This was saying to the jury that if they found that if the plaintiff was struck or kicked by the conductor without just cause or provocation, the defendant was liable for the exemplary damages. If this is true, then every act done without just cause or provocation authorizes exemplary damages. 2 Shearman & Redfield on Neg. (5 Ed.), sec. 748; Haines v. Schultz, 50 N. J. Law 481; 14 Atl. 488; cited with approval in Railroad, v. Prentice, 147 U. S. 101; Kennedy v. Railroad 36 Mo. 364; Dorsey v. Railroad, 83 Mo. App. 543; State v. Jungling, 116 Mo. 165; Railroad v. Quigley, 21 Howard (U. S.) 202; 12 Am. and Eng. Enc. of Law (2 Ed.), p. 24; 19 Am. and Eng. Enc. of Law (2 Ed.), p. 624; 12

Am. and Eng. Enc. of Law (2 Ed.), p. 24; Shay v. Thompson, 59 Wis. 540, 48 Am. Rep. 538; Bofastain v. Grazide, 115 Cal. 425, 47 Pac. 118. (2) The third instruction directs the jury that although the plaintiff may have been disorderly on the car, and that it was the duty of the conductor to put him off, yet, if in so doing he used unnecessary force, they were to find for the plaintiff. This instruction assumes that the plaintiff was guilty of creating a disturbance on the car which justified his expulsion. Norris v. White, 158 Mo. 29; State v. Hollingsworth, 156 Mo. 178; Railroad v. Bills, 104 Ind. 13, 3 N. E. 611; Railroad v. Bills, 118 Ind. 221, 20 N. E. 775; State v. Hollingsworth, 156 Mo. 178.

*F. E. Fickeissen* for respondent.

(1) Humiliation and disgrace are also held to be proper elements of damage in State ex rel. v. Weinel, 13 Mo. App. 583. (2) Either one or all of the elements of malice, ill will or wantonness will warrant a finding for exemplary damages. Perkins v. Railroad, 55 Mo. 201; Clark v. Fairly, 30 Mo. App. 335; Prueitt v. Quarry Co., 33 Mo. App. 18; Nelson v. Wallace, 48 Mo. App. 193; Arnold v. Sayings Co., 76 Mo. App. 159.

STATEMENT.

The petition in this cause contains two counts, of which the first complains of an assault on the plaintiff by the conductor of a street car operated by the defendant company, and the second, of an assault by both the conductor and motorman. The second count is as follows:

"And for another and further cause of action against defendant, plaintiff states that on the 11th day of November, 1901, he became and was a passenger on the aforesaid car by boarding the same and paying his fare for transportation.

"That while plaintiff was so a passenger on said car, said conductor, the servant of defendant, willfully, unlawfully and maliciously assaulted plaintiff, and repeatedly kicked him on the hands and body.

"That in answer to solicitation on the part of said conductor, the motorman of said car, also a servant of defendant, then and there took part in said assault on the plaintiff and in the course of said assault struck plaintiff on the back of the head with a heavy iron bar, felling him to the ground.

"That by reason of the blows and kicks inflicted on him as aforesaid, plaintiff suffered and will continue to suffer great pain and mental anguish, and was greatly humiliated to his damage in the sum of $2,500.

"Wherefore, the premises considered, plaintiff prays judgment against defendant in the sum of $2,500 for actual damages and his costs.

"And plaintiff further prays judgment against defendant for the further sum of $2,500 as exemplary damages."

The answer was a general denial.

After the evidence was in the plaintiff elected to go to the jury on the second count of the petition.

As the issue of this appeal depends on the action of the court below in instructing the jury, the instructions passed on are transcribed:

The plaintiff prayed the court to instruct the jury as follows:

"1.   The jury are instructed that if you find and believe from the evidence that, on the day in question, plaintiff became and was a passenger on one of defendant's cars, and that while he was so a passenger on said car he was, without any cause, assaulted by a person in the employ of defendant and acting as its agent and servant in operating said car as conductor; and if you find from the evidence that in the course of such assault the plaintiff was struck on the hand and kicked and that such striking and kicking were done by said

conductor while acting for defendant as aforesaid; and if you find that plaintiff suffered injury therefrom, then you will find for the plaintiff and assess his damages at such sum, not to exceed $2,500, as you may believe from the evidence will be a fair compensation to the plaintiff for the humiliation, if any, suffered by him and bodily pain and mental anguish, if any, which he suffered and will continue to suffer, and all of which were the direct results of such striking and kicking.

"2. If you find for the plaintiff under the foregoing instruction, and you further find from the evidence that the assault referred to in the foregoing instruction was made by the agent and servant of defendant, and that it was made with malice, then you may assess in favor of plaintiff exemplary damages in addition to the actual damages, not to exceed $2,500. By the term 'malice' used in the foregoing instruction, is not meant mere spite, hatred or dislike, but it means that condition of the mind which makes a person disregard the rights of others by doing an act without just cause or provocation.

"3. If you find from the evidence that plaintiff caused a disturbance on said car, and that the conductor undertook to eject him from the car, then the conductor of said car was justified only in using as much force as was reasonably necessary under the circumstances to eject said plaintiff; and if you find that the said conductor did undertake to eject plaintiff from said car and that in doing so he used more force than was reasonably necessary under the circumstances, then you will find for the plaintiff."

Which instructions the court gave to the jury and the defendant's counsel excepted.

The defendant upon its part prayed the court to instruct the jury as follows:

"1. The court instructs the jury that if the motorman assaulted and struck the plaintiff without justification, he would be liable in an action against him for all

injury he thereby caused the plaintiff, but the defendant is not liable to plaintiff on account of such assault by the motorman and such assault should not be considered by the jury in arriving at their verdict.

"2. The court instructs the jury that they should wholly disregard and exclude from their consideration the evidence which they have heard concerning the assault made upon plaintiff by the motorman with the switchbar, and they should not consider in arriving at their verdict any injury plaintiff may have sustained in consequence of being struck on the head by the motorman with the switchbar."

Which requests the court granted.

Defendant further asked the following instructions which were refused:

"1. The court instructs the jury that under the pleadings and the evidence offered by the plaintiff, their verdict should be for the defendant on the second count of the petition.

"2. The court instructs the jury that the plaintiff has not sued the defendant for wrongfully ejecting or removing him from the car on which he was riding; but he charges in the petition that the employees of the defendant unlawfully assaulted and beat him while he was a passenger on one of the defendant's cars; and if you find from the evidence that the plaintiff, while a passenger on the defendant's car used violent, profane or boisterous language, or was guilty of disorderly conduct in the presence of other passengers thereon; and that the conductor attempted to eject and did eject the plaintiff from the car and in so doing used such force only as was necessary for that purpose; then such acts upon the part of the conductor did not constitute an assault upon the plaintiff and the verdict of the jury should be for the defendant.

"3. The court instructs the jury that if they believe from the evidence that the plaintiff, on the eleventh day of November, 1901, while a passenger on one of de-

fendant's cars near Mullanphy street, used violent, bois-
terous or profane language, or was guilty of disorderly
conduct in the presence of other passengers who were
then and there upon said car, then it became and was
the duty of the defendant's conductor to remove the
plaintiff from the car and use such force as was neces-
sary for that purpose.

"4. The court instructs the jury that in his peti-
tion the plaintiff claims damages because of an assault
charged to have been committed upon him by the defend-
ant's conductor while he was a passenger on the defend-
ant's car. You are further instructed that if you be-
believe from the evidence that the plaintiff while a pas-
senger on the defendant's car used boisterous, violent or
profane language or was guilty of disorderly conduct
in the presence of the other passengers then on the car,
and that on account of the use of such language, or con-
duct the defendant's conductor put plaintiff off the car,
or attempted to do so, and that the plaintiff received his
injuries complained of in his petition while the conduc-
tor was so putting him off the car, then the jury will find
in favor of the defendant.

"5. The court instructs the jury that if they be-
lieve from the evidence that the plaintiff used violent
and threatening language to the conductor and that he
at the time held in his hand and used in a threatening
manner toward the conductor a dangerous instrument,
viz.: a crowbar; and if they further believe from the evi-
dence that such conduct upon the part of the plaintiff
caused the conductor to apprehend and that he did ap-
prehend that plaintiff was about to do him great bodily
harm, and that the conductor to avoid such apprehended
danger committed the acts complained of by plaintiff
in his petition, then the jury should return a verdict for
the defendant.

"6. The court instructs the jury that if they be-
lieve that the plaintiff assaulted the conductor and was
using a crowbar in a threatening manner, then the con-

ductor had the right to defend himself and to use such force as was necessary to repel such assault.

"7. The court instructs the jury that if they believe from the testimony that the conduct of the plaintiff justified the conductor in attempting to remove the plaintiff from the car as explained in the other instructions, then under the petition in this case the verdict of the jury should be for the defendant."

The court of its own motion gave the following instructions:

"1. The court instructs the jury that in his petition the plaintiff claims damages because of an assault charged to have been committed upon him by the defendant's conductor while he was a passenger on the defendant's car. You are further instructed that if you believe from the evidence that the plaintiff while a passenger on the defendant's car used boisterous, violent or profane language or was guilty of disorderly conduct in the presence of the other passengers then on the car; and that on account of the use of such language or conduct the defendant's conductor put plaintiff off the car, or attempted to do so; and that the plaintiff received his injuries complained of in his petition while the conductor was so putting him off the car, then the jury will find in favor of the defendant; providing you find from the evidence that in so putting plaintiff off the car the conductor used no more force than was reasonably necessary under the circumstances for that purpose.

"2. The court instructs the jury that if they believe from the evidence that the plaintiff used violent and threatening language to the conductor and that at the time held in his hand and used in a threatening manner toward the conductor a dangerous instrument, viz., a crowbar, and if they further believe from the evidence that such conduct upon the part of the plaintiff caused the conductor to apprehend that plaintiff was about to do him great bodily harm, and that the conductor to

avoid such apprehended danger committed the acts complained of by plaintiff in his petition, then the jury should return a verdict for the defendant; providing you further believe from the evidence that plaintiff's said conduct toward the conductor was such as to cause a man of ordinary prudence, situated as was the conductor to apprehend that plaintiff was about to do him great bodily harm.''

It will be seen that the court refused to allow the plaintiff to go the jury for damages on account of an assault on him by the motorman; because that assault, if it occurred at all, occurred after the plaintiff had ceased to be a passenger.

This verdict was returned:

''We, the jury in the above entitled cause, find the issues herein joined in favor of the plaintiff and assess his actual damages at the sum of $750 dollars, and his exemplary damages at the sum of $175 dollars. (Signed) Henry J. Linneman, Foreman.''

The defendant company appealed.

GOODE, J. (after stating the facts as above).—

1. While the plaintiff was a passenger on one of the St. Louis Transit Company's street cars an affray occurred between him and the conductor of the car, in which the plaintiff was more or less hurt and now seeks damages for his loss and suffering. Plaintiff became a passenger near O'Fallon Park in the northern part of the city of St. Louis, intending to leave the car at Howard street.

The evidence is conflicting and uncertain as to when the altercation began, what it was about, or who was to blame. Ickenroth and Jacob Harbstreet had been working for a day or two for the same contractor, the former as stonecutter, the latter as carpenter; but they swore they did not know each other, although both of them boarded the car after quitting work late in the evening and were seated together while in transit. Icken-

roth carried an iron or steel crowbar, two and one-half feet long and of good size, used in setting building stones. The car was well filled with passengers, among whom were some women. It is well-nigh impossible to give the particulars of the affray, so contradictory is the testimony of the witnesses. At least four different hypotheses concerning the true facts may be derived from the evidence; first, that the conductor causelessly assaulted and beat the plaintiff; second, that plaintiff was intoxicated, boisterous and profane, and the conductor reproved him for his conduct; as he resented the reproof and refused to refrain from the use of vile language, the conductor put him off the car, employing more force in doing so than was necessary; third, that Ickenroth began the affray by assaulting the conductor with the crowbar without provocation; fourth that the conductor remonstrated with Ickenroth for using improper language; whereupon the latter continued his profanity and threatened to strike the conductor with the crowbar, who ejected him from the car without the use of unnecessary force. As all of those theories of the affray were deducible from the testimony, instructions on all of them were appropriate in order to thoroughly advise the jury concerning the issues, and should have been granted if requested.

2. It may be seen by reading the third insruction given at plaintiff's request, as well as other given instructions, that the trial court ruled that if the plaintiff raised a disturbance on the car, the conductor had the right to eject him, but could use lawfully only such force as was necessary to accomplish the ejection; and if he used excessive force, plaintiff was entitled to damages for any injury inflicted on him thereby. Defendant contends this view of the case was erroneous, as authorizing a recovery on a cause of action not stated in the petition; that the petition states a cause based on a wrongful and unprovoked assault and battery; not one based on the employment of excessive force in doing what would

have been otherwise lawful; namely, expelling plaintiff from the car for misconduct. To support this position, defendant's counsel cites us to the case of Chicago etc. Ry. v. Bills, 104 Ind. 113, 118 Ind. 221. The complaint, in that action attempted to charge a wrongful expulsion, of Bills, the plaintiff, from a train, and, as originally drawn, contained no averment of an assault or the use of excessive force. The opinion on the first appeal took up the complaint, scrutinized it and ruled that while it showed force was used to expel the plaintiff, it did not state or show that more was used than was necessary. The decision was that, as the complaint failed to state facts showing either the use of excessive force by the train conductor or a wrongful ejection of the plaintiff, it stated no cause of action at all. After the reversal of the first judgment an amended complaint was filed, which proceeded on the theory that while the plaintiff may have been wrongfully on the train, he was ejected with needless violence and injured. On the second appeal this complaint was held good.

Ickenroth's case, as stated in his petition, is not for a tortious ejection from the car, but for a tortious battery while he was a passenger on it. The company answered denying the tort and, in support of that denial, endeavored to prove plaintiff so misbehaved as to justify the conductor in ejecting him from the car. Testimony was adduced from which the jury might have reasonably inferred that plaintiff was obstreperous and profane, thereby losing his right to passage; but that the conductor resorted to unreasonable violence, and inflicted uncalled for personal injury on the plaintiff, in expelling him from the car. Violence to plaintiff's person when none was required to make him depart, or greater violence than was required for that purpose, was equivalent to an assault and battery; as was decided in the Indiana authority cited by defendant. Chicago, etc. Ry. v. Bills, 118 Ind. 1. c. 224.

In a litigation in Maryland for an expulsion from

a car with superfluous force and outrage, the trial court instructed the jury that if the railway company's servants ejected plaintiff with unnecessary violence, the verdict must be for the plaintiff; and carried the same theory into all the instructions. The controversy in the Supreme Court turned mainly on the question of exemplary damages; but it was held, *inter alia,* that proof of an excessive battery by the trainmen sufficed to avoid the defense of prior disorderly conduct on the part of the passenger—that proof of excessive violence is a good reply to the plea of *son assault demesne.* Phila. etc. Ry. Co. v. Larkin, 47 Md. 155.

There are home authorities in point.

In Perkins v. Railway, 55 Mo. 201, the petition charged an unlawful ejection of plaintiff from a car with force and violence. The testimony went to prove Perkins refused to pay full fare and for that reason was put off the train; but was roughly handled. The court instructed that if he refused to pay his fare when requested, the conductor was justified in putting him off the train, using therein no more than the requisite force; that if more than necessary force was used, the defendant was liable. That instruction was approved on appeal. Brown v. Railway, 66 Mo. 588; Canfield v. Railway, 59 Mo. App. 354.

The doctrine that unnecessary or malicious personal violence, perpetrated on a citizen by another in enforcing a legal right, constitutes an assault and battery, ramifies various branches of the law. An officer may not use excessive violence to effect an arrest, or he will be guilty of an offense (State v. Dierberger, 96 Mo. 666) nor may one use more force than is reasonably called for in taking his own property (State v. Dooley, 121 Mo. 591); or in overcoming a trespasser (Low v. Elwell, 121 Mass. 309). And if a man uses excessive force in defending himself against personal attack, he commits an assault and battery. O'Leary v. Rowan, 31 Mo. 117; State v. Stockton, 61 Mo. 382.

Ickenroth v. St. Louis Transit Co.

We see, therefore, that in those emergencies when it becomes necessary to employ physical energy against an antagonist, to accomplish a righteous purpose, and when the law will excuse one for resorting to moderate violence, the force employed must be kept within bounds and can not exceed what is needed to effect the lawful end without rendering the actor guilty of a tort; or maybe, a crime.

The petition in this case avers an assault and battery, which averment could be made good by proving needless violence was done to plaintiff's person in excluding him from the car for bad conduct. Evidence of that sort would tend directly toward establishing the cause of action presented. This was decided in O'Leary v. Rowan, supra. We, therefore, hold the instruction authorizing a verdict for the plaintiff, if he created a disturbance and was ejected from the car by the conductor with unreasonable harshness, did not broaden the issues beyond those tendered by the petition, but was consistent with them. The instruction would please us better had it informed the jury that the conductor had the right to compel the plaintiff to get off the car if the latter refused to desist from unseemly conduct or language, and had particularized the acts of violence which might, perchance, have been unnecessary; such as violently and needlessly striking or kicking the plaintiff. A kindred charge, which was more precise and instructive, may be read in Perkins v. Railway, supra.

3. Passengers on a street car must deport themselves with decency and decorum; must refrain from boisterous, vulgar or profane language or rude behavior, and respect the rights and sensibilities of their fellow passengers; or the carmen may, and ought to, compel them to leave the car. It is the duty of the servants of a carrier in charge of a vehicle on which passengers are traveling, to preserve order, suppress offensive actions and language and protect passengers from an-

noyance, insult and injury by rough and turbulent characters. Sira v. Railway, 115 Mo. 127; Carrier v. Railway, 74 S. W. 1006; 4 Elliott, Railways, 1639, and citations. A street car may be rendered intolerable to women, and even to men, by the foul language and disorderly conduct of a passenger. Not only for its own interest, but for the comfort of its patrons, a street railway company should use reasonable and necessary means to preserve good order on its cars. The trial judge did right to recognize these principles in charging the jury.

The sixth of defendant's refused instructions should have been given. There was positive testimony that plaintiff first assaulted the conductor and struck him with a crowbar, besides brandishing it in a threatening manner. Said instruction declares that if the plaintiff began the assault, the conductor had the right to defend himself, using no more force than was necessary. He had that right, and we find no other charge which directly said so. None of the given instructions informed the jury that if the plaintiff first assaulted the conductor, the latter was justified in defending himself. All of those given proceeded on the same assumption of the conductor's right to eject the plaintiff for bad conduct, and defend himself from threatened harm, if the menace was of a character to afford reasonable cause to apprehend danger. It was proper to direct a verdict for the defendant if the conductor was actually assaulted, not merely threatened, and defended himself without using excessive violence; and we think error was committed in refusing a charge of that sort which was expressed in concise and fitting language.

4. While we would scarcely reverse the judgment for the refusal of the third refused instruction, as it was perhaps barely covered by those given, it might have been given, too, with propriety. It was a direct and pertinent charge that if the plaintiff used violent, boisterous and profane language, or was guilty of dis-

orderly conduct in the presence of other passengers, it was right for the conductor to remove him from the car. That is sound law, and we approve it.

5. It would be well, if requested, to instruct in regard to the degree of force the conductor might have used to expel plaintiff, without transgressing the law, if the latter refused to leave the car or desist from bad conduct, and offered resistance to being put off. The question of when violence exerted in achieving a lawful end becomes excessive, received the attention of the Supreme Court in a recent case, and instructions bearing on it were reviewed and some approved. Norris v. Whyte, 158 Mo. 20. Those approved furnish convenient models for imitation in cases where the same issue is to be determined.

6. If part of the testimony concerning the conductor's attack on the plaintiff was believed by the jury, exemplary damages might be assessed against the defendant as his responsible employer. Malecek v. Railway, 57 Mo. 17; Doss v. Railway, 59 Mo. 27; Travers v. Railway, 63 Mo. 421; Hicks v. Railway, 68 Mo. 329; dissenting opinion of GILL, J., in Rouse v. Railway, 41 Mo. App. 298, approved by the Supreme Court in Haehl v. Wabash Railway, 119 Mo. 325. The assault was wanton and outrageous unless the plaintiff gave provocation by using profane language and disregarding the conductor's rebuke and command to desist.

The instruction on exemplary damages, after referring to another which told the jury that if they found the conductor assaulted plaintiff without any cause the verdict should be for the plaintiff, told them if they found such an assault was made with malice, they might assess exemplary damages. The term "malice" was then stated to mean not mere spite, hatred or dislike; but that condition of mind which makes a person disregard the rights of others by doing an act without just cause or provocation. Legal or implied malice (as distinguished from ill will, or malice in the vernacular sense

of the word) is defined to be the *intentional* doing of a *wrong* act without just cause or excuse. State v. Ellis, 11 Mo. App. 587, 74 Mo. 207. The definition given by the court was, therefore, inaccurate.

The point is made by defendant's counsel that exemplary damages can be given for an assault only when the act was characterized by actual malevolence or brutality; but this proposition is disputed as one contrary to the decided law of this State. The point has perplexed us. It seems to be quite material in view of one possible ground of liability in the present case, namely, that the conductor was more violent in ejecting plaintiff than, in reason, he ought to have been. It is doubtful if the essential condition on which the right to give exemplary damages depends in cases like this, is intelligibly and fairly presented to the minds of a jury by telling them they must find the defendant acted maliciously and then telling them that malice means only the intentional doing of a wrong act without just cause or excuse. Does not something further need to be said, calling attention to the inquiry whether the assault was wanton or brutal? It seems to us that, for the achievement of justice, such advice is of great moment. Malice is presumed from the intentional doing of a wrongful act; although the attendant circumstances may be such as to cleanse the act largely, if not altogether, of moral turpitude. A person may commit a trespass or other tort when no bad motive exists and when he supposes he is acting inside the law. And there are decisions against the award of exemplary damages in those instances. Engle v. Jones, 51 Mo. 316; Pruitt v. Quarry Co., 33 Mo. App. 18. One may go too far, in the heat of passion, in resenting an assault, and malice be implied. In the case in hand the conductor may have been wrought up by Ickenroth's conduct and language, and by the resistance offered to a commendable attempt to make him leave the car, until the conductor, in the ensuing struggle, overstepped the limit of necessary force

and hurt him too much.   Plainly, there is a vast differ-
ence between such deeds as those mentioned and mali-
cious trespasses or wanton and brutal assaults.   Will a
jury understand that the law concedes the difference, if
nothing is said to enlighten them beyond stating the
artificial definition of malice?   The general theory of
exemplary damages as expounded by text-writers and
most of the judgments on the subject, is that they are
given, not only by way of example, but to punish an
evil intention or motive.   1 Sedgwick, Damages (8 Ed.),
chap. 11, sec. 347, et seq., and cases cited.   The tenor
of the decisions shows that barbarity and depravity of
conduct weigh heavily with courts in authorizing puni-
tive verdicts.

But the propriety of giving only the technical in-
struction as to what malice is, has been considered and
recognized by the appellate courts of this State and must
be accepted as the law.   The question came up at an
early day in Goetz v. Ambs, 27 Mo. 26, an action for
assault like the present one.   The lower court told the
jury they might assess smart money in whatever sum
they deemed right, considering all the facts.   The de-
fendant prayed a charge that in allowing or refusing
smart money they should consider mainly the malicious
intent and motive of the defendant.   The refusal of that
charge was indorsed by the Supreme Court; which held
it to be unsound, as implying that ill will and hostility
toward the defendant must be found as a prerequisite to
giving exemplary damages; whereas, if the injury was
intentionally inflicted, and did not ensue from a simple
want of care, exemplary damages might be given.   The
further observation was made that legal malice meant
no more than that the act was willful; which is un-
doubtedly true.   The doubt is whether a jury may not
be better informed by an ampler and more definite
charge; by directing them to consider whether the de-
fendant's tort was marked by wantonness, brutality or
other aggravating features.

In Trauermann v. Lippincott, 39 Mo, App. 478, the action was trespass and the definition of malice given was the usual technical one: the intentional doing of a wrongful act without just cause or excuse. The court approved the instruction and, in discussing the general question, harmonized the doctrine of Goetz v. Ambs with other cases in this State and elsewhere by emphasizing the force of the word "intentional;" which was said to signify, when used in connection with the doing of a wrongful act, not only that the party intended to do the particular act, but to do it knowing at the time that it was wrongful. The reasoning of the court proceeds as follows:

"Understood in this way Goetz v. Ambs is not out of line with the foregoing decisions requiring the act to partake of wantonness or a reckless disregard of the rights of others. For, if one intentionally does a wrongful act and knows at the time that it is wrongful, then he does it wantonly; by which word I understand is meant, causelessly, without restraint and in reckless disregard of the rights of others. When one intentionally commits a wrong he does it from an evil spirit and bad motive. Good motive or spirit does not impel the commission of willful wrong."

That argumentation points to the conclusion that some effort is needed to make the technical rule square with the facts of human nature—an effort which juries are unlikely to make successfully. It enforces the opinion that they need plainer information than is given in the usual charge, to enable them to decide the issue of punitive damages according to law.

A different view of the question was taken in Morgan v. Durfree, 69 Mo. 469. The opinion in that case declares that exemplary damages are proper only when there are aggravating circumstances, citing Cooley on Torts; which eminent authority announces the law to be that motive is an element of the highest importance in mitigating or aggravating damages. See p. 836 (2

Ed.). It is noteworthy that our statute giving an action for death caused by wrongful acts, requires the jury, in assessing the damages, to have regard to the mitigating or aggravating circumstances. R. S. 1899, sec. 2866; Owen v. Brockschmidt, 54 Mo. 285.

The existence of a distinction between legal and actual malice, and the need of proving the latter as a prerequisite for an award of punitive damages, has been repudiated in this State in actions for slander and libel. Callahan v. Ingram, 122 Mo. 355; Fulkerson v. Murdock, 53 Mo. App. 151; Arnold v. Sayings Co., 75 Mo. App. 159. The reasoning in Callahan v. Ingram, expands the same rule to include actions for other torts:

"We may say, then, that malice, whether expressed or implied, means the same, the only difference being in the establishment of it. When malice is implied from the words spoken or published, the burden is on the defendant to prove lawful justification or excuse, or the absence of a malicious intent. On the other hand, if the words themselves do not imply malice, the burden rests upon the plaintiff to establish it. When malice exists, punitive damages may be given and it can not be seen why a distinction should be made, when the evil intent existed, whether implied or proved. It is true a distinction is made by some courts, and it is held that, unless express malice is proved, exemplary damages should not be allowed. This line of decisions was followed by the St. Louis Court of Appeals in Nelson v. Wallace, 48 Mo. App. 193, and Fulkerson v. Murdock, 53 Mo. App. 156.

"It is argued that punitive damages are only allowed in trespass and other actions for torts, when the offense is committed in a wanton, rude and aggravated manner, indicating oppression or a desire to injure, and that no reason can been seen for the application of a different rule in cases for slander and libel. We think the distinction does not in fact exist. Malice is implied in the willful doing of any wrongful act, without justifica-

tion or excuse whereby injury is done to another, whether it be to his character, his person, or his property; where such act is done maliciously, therefore, the injured person should be entitled to exemplary damages, and it would be immaterial whether malice was implied from the nature of the act itself, or inferred as a fact, from all the circumstances under which it was committed. The question is, whether the wrong was done willfully and without lawful justification or excuse.''

The effect of that decision, as we gather it, is not that an evil purpose or desire to do needless harm is no prerequisite for an award of exemplary damages; but that a desire of that sort may be implied from the tort itself, as well as from the circumstances of it. This leaves a jury free to consider facts of aggravation and their minds may be directed to them.

The law is that exemplary damages are given only when the evidence shows an unlawful act coupled with an intentional wrong; but facts showing oppression, wantonness or outrage are always dwelt on. 1 Sedgwick, Damages, sec. 365; Kennedy v. Railway, 36 Mo. 350; Engle v. Jones, 51 Mo. 316; Perkins v. Railway, 55 Mo. 201; State v. Jungling, 116 Mo. 162; Dorsey v. Railway, 83 Mo. App. 528; Railway v. Quigley, 21 Howard (U. S.) 202; 19 Am. and Eng. Ency. Law (2 Ed.), 624; 12 Am. and Eng. Ency. Law (2 Ed.), 24; Tanger v. Railway, 85 Mo. App. 28; Morgan v. Durfee, 69 Mo. 469; Wamganz v. Wolff, 86 Mo. App. 205; O'Brien v. Loomis, 43 Mo. App. 29. In actions for injuries inflicted by an assault and battery, it has been customary to direct an allowance of punitive damages if the assault is found to have been of a wanton, malicious or brutal character. Johnson v. Bedford, 90 Mo. App. 43; Gildersleeve v. Overstolz, 90 Mo. App. 518; Hickey v. Welch, 91 Mo. App. 4; Trauerman v. Lippincott, 39 Mo. App. 478. We think it is still proper, if not essential, to charge a jury, when requested, to consider

whether an assault was characterized by wanton or malicious violence, in determining the issue of exemplary damages; though it is not error to give the conventional definition of malice. It has been well said, we think, that such damages should only be assessed in cases of aggravated injury, to subserve a wholesome public example, and that the rule allowing them ought not to be extended. O'Brien v. Loomis, supra.

For the errors noted the judgment is reversed and the cause remanded. *Bland, P. J.,* and *Reyburn, J.,* concur.